WILSON et al. v. GREGG.

No. 34653. Dec. 23, 1952.

Rehearing Denied April 7, 1953.

255 P. 2d 517.

Rainey, Flynn, Green & Anderson. Oklahoma City, and Biddison & Rheam, Tulsa, for plaintiffs in error.

Mosteller, McElroy & Fellers, by James D. Fellers, Oklahoma City, for defendant in error.

PER CURIAM. The plaintiffs filed a petition in which they allege that on the 1st day of April, 1946, they entered into a written partnership agreement with the defendant under the firm name of Gregg-Wilson Fire Protection Company. They attached to their petition as Exhibit "A" a contract of partnership in which they agreed to operate a business located in Oklahoma City, Oklahoma, for the purpose of selling, installing and maintaining automatic sprinkler systems and other fire protection and extinguishing equipment. They agreed to do all such things as may be necessary and advisable in connection therewith; and in establishing, conducting and maintaining said business to make and execute contracts and agreements, * * * and to acquire, purchase, hold, lease, sublease, sell and convey such real or personal property as may be necessary or required with any or all of the aforesaid business. The contract is quite lengthy and it is not necessary to recite all of its provisions. Paragraph 15 thereof provides that if any dispute, difference or question shall arise between the partners, or their representatives, in regard to the manner in which the business is being

transacted, or between the partners with respect to their accounts, or in connection with the dissolution or the winding up of said business, or the construction, meaning or effect of this special partnership agreement, or anything therein contained, or the rights of liabilities of the partners, or their representatives under these presents, or otherwise in the premises, then every such dispute, difference or question shall be referred to arbitration of three disinterested persons. This paragraph further provides for the manner of the selection of the arbitrators, the manner of notice to interested parties and the effect of the award of the arbitrators. The petition also alleges that a dispute arose between the parties and that plaintiffs proceeded under the terms of the partnership agreement to have the dispute arbitrated; that they selected an arbitrator and the arbitrator so selected by them gave notice to the defendant that he had been selected as an arbitrator and that he would proceed to determine all issues of fact and law under the terms of the special partnership agreement at a certain time and place.

The petition further alleges that defendant, through his attorney, declined to appoint an arbitrator and he gave as reasons for so declining that the partnership agreement expired by its terms in April, 1948, and further that the partnership agreement provided, in effect, that either of the general partners might withdraw from the special partnership and sell his interest to the other general partner and that this was done under a partnership agreement dated January 31, 1948, and that there was no binding agreement between the partners which provides for the appointment of arbitrators. That the defendant did not appoint an arbitrator, declined to participate in arbitration and did not appear or take part in any hearing before the arbitrator appointed by the plaintiffs. That the arbitrator made a finding that the defendant was liable to plaintiffs in the sum of $4,586.05. The petition prays for a judgment against the defendant for the amount found due by the arbitrator. The petition pleads that all the steps were taken on the part of plaintiffs to consummate the arbitration. By amendment to the petition the plaintiffs plead that defendant is estopped to deny the validity of the arbitration agreement for the reason that defendant permitted plaintiffs to incur attorneys' fees and arbitrator's expenses.

The defendant demurred on the ground that the petition did not state facts sufficient to constitute a cause of action in favor of plaintiffs and against defendant.

Upon argument of the demurrer it was stipulated in open court that the first cause of action pleaded in the petition is the alleged arbitration award and that the second or alternative cause of action is for an accounting and that the defendant might demur separately to them even though they are not set forth or numbered in the petition. The court sustained the demurrer to the first cause of action which pleaded the arbitration award to which the plaintiffs excepted. The court overruled the demurrer to the second cause of action for an accounting to which the defendant excepted. The case is here to test the ruling of the trial court in sustaining the demurrer to the first cause of action. Attorneys for plaintiffs presented their case for reversal on four propositions:

1. Where the only unsettled issue between the parties was that of the amount due, if any, by the partners to the partnership, the determination by an arbitrator was but a condition precedent to the right of either to recover as upon an accounting.

2. The power given by defendant and the right to an arbitrator under paragraph 15 of the partnership agreement was supported by a valuable consideration, and was not revocable, either under the statute governing powers, or under principles of the common law.

3. The defendant's acts in relation to the proposed arbitration in declining

to appoint an arbitrator or to participate therein did not constitute a revocation of the power of right of arbitration.

4. Even if the defendant had the right of revocation and his action would otherwise constitute a revocation, he is estopped to assert the revocation for the reason set out in the plea of estoppel.

We cannot agree that any of the reasons given are valid under the record before us. The contract in question is quite broad. It provided for the submission to arbitration of any future controversies between the parties as to any and all matters which might or could arise. By the contract, if we hold that it is legal, the parties bound themselves on all types of questions both of fact and law to abide the findings and conclusions of arbitrators without resort to the courts. Arbitration agreements have been sustained in a number of cases by this court, but we find no case, and none is cited, in which an arbitration agreement providing for the submission of all future controversies to arbitration has been upheld. Generally arbitration agreements to submit controversies arising in the future have been held unenforceable because they deprive the courts of jurisdiction and are contrary to public policy. The decisions of some courts hold that such agreements are void. Other courts hold that such agreements are voidable and still others hold that such agreements are not enforceable. There is a line of decisions which hold that even though the agreement is not enforceable it is binding if acted upon by both parties thereto and an award made. Some authorities have held that an agreement to submit minor elements of a future controversy to arbitration is binding. There is authority both in the decisions of the courts and in textwriters sustaining arbitration provided for by constitutions, by-laws, rules and regulations of lodges and other voluntary associations on the theory that such associations make their own rules and laws and the courts will not interfere with such association's enforcement of such rules. But the great weight of authority is to the effect that an agreement such as is involved in this case is not enforceable and that an action will not lie based upon the findings and conclusions of the arbitrators. There are decisions to the effect that agreements to arbitrate are a condition precedent to an action on the original cause. We are not dealing in this case with any of the exceptions or distinctions above mentioned. In Oklahoma the common law of arbitration prevails.

3 Am. Jur., Arbitration and Award, par. 27, announces the rule:

"Although in any specific case persons may make a judicial tribunal for themselves by a submission to arbitration, at common law their power to do so is hedged about by the most cautious rules. It is said that there is an obvious distinction between cases where an agreement that the decision of designated persons shall be conclusive is made after a dispute has actually arisen, and cases where it is made before any controversy exists. After a right has accrued or an obligation has been incurred, one may waive or decline to enforce his rights, or by contract, bind himself to submit the matter to arbitration, but he cannot bind himself by contract in advance to renounce his right to appeal to the courts to redress his wrongs, for this right is one which in its nature is inalienable."

The rule is stated in 3 Am. Jur., Arbitration and Award, par. 31, in the following language:

"So long as agreements to arbitrate, made in advance of the controversy, remain executory, different rules prevail than in the case of executed agreements. It is settled at common law that a general agreement, in or collateral to a contract, to submit to final determination by arbitrators the rights and liabilities of the parties with respect to any and all disputes that may thereafter arise under the contract is voidable at will by either party at any time before a valid award is made, and will not be enforced by the courts, because of the rule that private persons cannot, by a contract to arbi-

trate, oust the jurisdiction of the legally constituted courts."

A power as the term is used in 60 O.S. 1951 §183, is an authority to do some act in relation to real property, or to the creation or revocation of an estate therein, or a charge thereon, which the owner granting or reserving such power might himself perform for any purpose. Sec. 181 also provides that powers in relation to real property are those which are specified by the statute. Sec. 194 of the same statute provides that powers may be created only: First, by a suitable clause contained in a grant of some estate in the real property to which the power relates, or in an agreement to execute such grant; or second, by a devise contained in a will.

Arbitration is defined by 3 Am. Jur., Arbitration and Award, par. 2:

"Arbitration is a mode of settling differences through the investigation and determination, by one or more unofficial persons selected as a domestic tribual for the purpose, of some disputed matter submitted to them by the contending parties for decision and award, in lieu of a proceeding for a judgment in an established tribunal of justice. Its object is speedily to determine disputes and controversies by quasi judicial means, thus avoiding the formalities, the delay, the expense, and the vexation of ordinary litigation."

The nature of arbitration and award is set out in 3 Am. Jur., Arbitration and Award, par. 4:

"Although an agreement for arbitration may create substantive rights between the parties as is the case with any other contract, arbitration itself is a form of procedure whereby differences may be settled. It is not a definition of the rights and wrongs out of which differences grow. The law of arbitration is, in the United States at least, a part of the law of remedies, rather than of the substantive law. Arbitration, in theory, is a substitute for a proceeding in court, athough in formal respects it may differ therefrom. Unlike procedure in the established courts, an arbitration depends, for its existence and for jurisdiction over parties and subject-matter, upon the voluntary agreement of the parties, known as the submission, subject to limitation only by express provisions of law. A reference to arbitration occurs only where there is a difference or matter in dispute between two or more persons which requires a decision of a judicial, rather than a ministerial, nature."

That a power is not arbitration and that arbitration is not a power and that the two terms are governed by different rules and are intended as entirely different and distinct remedies is apparent from an examination of the same. Counsel say that they find no decisions holding that the term "power" as used in the Oklahoma statutes modifies or affects the law of arbitration. Power is created by one or more parties. Arbitration is always created by two or more parties. Power is a lien on real property in its embrace from the time the instrument creating it takes effect; a stipulation to arbitrate creates no lien. Power can create authority to deed, mortgage, rent and otherwise deal with real property; arbitrators have no authority except to make an award. The exercise of a power is ministerial; the act of making an award by arbitrators is quasi judicial. Powers are created by provisions in a grant of real property or in instruments to execute such grants or by a devise contained in a will. Agreements to submit to arbitration and submission to arbitration are by stipulation of two or more parties. Authority may be given by one to execute a power after death of testator and the beneficiary named to enjoy the benefits or to execute the trust. It would be a rare case indeed if a testator should provide in his will for arbitration and appointment of arbitrators. In the view that we take it is immaterial in this case whether power, as defined by 60 O.S. 1951 §183, applies only as to real property or to both real and personal property. Power is defined by the Oklahoma Legislature and arbitration in Oklahoma is as it exists at common law and listed above are a few of the differences between the laws of

power and the laws of arbitration. We find nothing to indicate that the Legislature had in mind in the enactment of powers to modify the common law on arbitration. This court, in the case of Kuhara Trading Co., Ltd., v. Russell Jobbers Mills, 103 Okla. 298, 230 P. 242, in the body of the opinion said:

"We have no statute on arbitration in this state and only the common law to govern arbitration. In states that have statutes on arbitration, they are governed by the statute and the authorities from those states are based on the statute, while in states that have no statute they are governed by the common law."

" * * * *

"But unless there is an arbitration and findings, it is not binding on the parties, and some of the cases hold that either party may withdraw from the arbitration at any time before the trial award. This being a common law state on the question of arbitration, we do not think that the clause in the contract relating to arbitration precludes the defendant from recovering on its cross-petition."

One of the contentions urged in this case is that the agreement to arbitrate was not revoked as provided by the law. Under the common law unmodified by statutes the agreement in this case is unenforceable and may be revoked at any time before award. The case of Sartwell v. Sowles, decided by the Supreme Court of Vermont and reported in 72 Vt. 270, 48 Atl. 11, 82 Am. St. Rep. 943, says:

"A submission to arbitration may be revoked by either party, at any time before an award is made and published, notwithstanding an agreement not to revoke, and when the submission is revoked it is no bar to a subsequent action."

The case of People ex rel. Union Insurance Co., of Philadelphia v. Nash, reported in 111 N. Y. 310, 7 Am. St. Rep. 747, in deciding the question of revocation, uses the following language:

"Submissions to arbitration are revocable in their nature, and the par-

ties cannot make that irrevocable which is of its own nature revocable."

The same question was decided by the Supreme Court of Nebraska, in Home Fire Insurance Co., of Omaha, v. Kennedy, reported in 47 Neb. 138, 66 N.W. 278, 53 Am. St. Rep. 521, where the court said:

"A stipulation for arbitration, which does not provide for submitting the matters in dispute to a particular person, or to a particular tribunal, but to one or more persons to be mutually chosen, is revocable by either party, and will not oust the jurisdiction of the court having cognizance of the subject matter of the controversy."

In the case of Pepin v. Societe St. Jean Baptiste, 23 R. I. 81, 49 Atl. 387, 91 Am. St. Rep. 620, in the body of the opinion, on page 623, the court used the following language:

"The finality of such an agreement is objectionable for several reasons. The reason generally given is that it ousts courts of jurisdiction, and so deprives a party of his rights under the law. While he may waive those rights in a given case, when he knows the circumstances and the effect of his act, it is held to be contrary to public policy for one to bar himself in advance from a resort to the courts for some future controversy of which he can have no knowledge at the time of the original agreement. At first sight this may seem to interfere with the obligation of a contract, but it is not so. All the elements of the contract affecting liability remain, the agreement to arbitrate relating only to remedy. It is to be presumed that a just decision will be reached in either case, and hence neither party suffers injury. A resort to the courts may be very necessary to a claimant because he cannot compel the attendance of witnesses before a voluntary tribunal; or the matter may be of so great interest to the members as to preclude impartial arbitrators."

In the notes to the case of Williams v. Branning Manufacturing Co., 153 N. C. 7, 68 S. E. 902, beginning at page 637 of 138 Am. St. Rep. Freeman, in his comments upon the law of revocation, at page 641, states as follows:

"The authorities are numerous which recognize the rule that an agreement or stipulation to submit matters in controversy to arbitration may be revoked by either party thereto at any time before the award is made, except when the matters are referred to arbitrators by a rule of court, or the statute prohibits a revocation."

The case of Baltimore & Ohio Railroad Co., v. Stankard, reported in 56 Ohio St. 224, 46 N. E. 577, 60 Am. St. Rep. 745, holds that an agreement to arbitrate future controversies is not enforceable. In the body of the opinion, at page 747, the court states the rule in the following language:

"Courts are created by virtue of the constitution, and inhere in our body politic as a necessary part of our system of government, and it is not competent for anyone, by contract or otherwise, to deprive himself of their protection. The right to appeal to the courts for the redress of wrongs is one of those rights which is in its nature under our constitution inalienable, and cannot be thrown off, or bargained away."

The Supreme Court of Utah, in Johnson v. Brinkerhoff, 89 Utah 530, 57 P. 2d 1132, states the law in the following terms:

"Statute providing for arbitration of disputes existing at time of, making of arbitration agreements held not to apply to agreements to arbitrate future disputes."

The common law of arbitration has been changed by statutes in some states and Congress has enacted special statutes governing arbitration in maritime controversies. In building contracts, sales of goods and lands, and, in other transactions, provisions for appraisement have been sustained. The law governing arbitration and the law governing contracts for appraisal is a very different thing.

It is urged by plaintiffs that they incurred an expense to their attorney and to the arbitrator and that by reason of same the defendant is estopped to deny the validity of the award. As above pointed out, a stipulation to arbitrate future controversies may be revoked at any time before the making of the award. In this case the defendant, through his attorney, on two occasions, declined to take part in the arbitration proceedings. He took the position that there was nothing to arbitrate and declined to appoint an arbitrator and did not appear or participate in the hearing.

The defendant is not estopped to deny the effect of the award.

Affirmed.

This court acknowledges the services of Attorneys Roscoe C. Arrington, Leonard Carey, and Joe H. Reily, who as Special Masters aided in the preparation of this opinion. These attorneys were recommended by the Oklahoma Bar Association, approved by the Judicial Council, and appointed by the court.

HALLEY, V.C.J., and CORN, DAVISON, JOHNSON, and BINGAMAN, JJ., concur. WELCH, GIBSON, and O'NEAL, JJ., dissent.