OPINION — AG — ** OKLAHOMA DEPARTMENT OF TRANSPORTATION — CONTRACTORS — AGREEMENT — ARBITRATION ** (1) THE OKLAHOMA TRANSPORTATION COMMISSION DOES HAVE LAWFUL AUTHORITY, UNDER 69 O.S. 303 [69-303] — 69 O.S. 304 [69-304] TO PROMULGATE ADMINISTRATIVE RULES AND REGULATIONS REQUIRING CONTRACTORS DOING BUSINESS WITH THE DEPARTMENT OF TRANSPORTATION TO ENTER INTO A BINDING ARBITRATION AGREEMENT FOR THE RESOLUTION OF DISPUTED CLAIMS AS A CONDITION OF DOING BUSINESS WITH DEPARTMENT. (2) SUCH AN AGREEMENT TO ARBITRATE FUTURE DISPUTES, ONCE CONTRACTUALLY ENTERED INTO BY THE DEPARTMENT AND THE CONTRACTOR, IS VALID AND ENFORCEABLE, BY VIRTUE OF 15 O.S. 802 [15-802](A) (3) THE TERMS OF SUCH AN ARBITRATION AGREEMENT MAY VALIDLY EXCLUDE ATTORNEYS FROM ELIGIBILITY TO SERVE AS ARBITRATORS. (4) THE TERMS OF SUCH AN ARBITRATION AGREEMENT MAY 'NOT' VALIDLY PROHIBIT A PARTY FROM BEING ACTIVELY REPRESENTED BY LEGAL COUNSEL AT ALL STAGES OF THE PROCESS, BY VIRTUE OF 15 O.S. 806 [15-806] (LEGAL ADVICE, LEGAL ASSISTANCE, LEGAL AID, ARBITRATION AGREEMENTS) CITE: ARTICLE XVI, SECTION 1, 15 O.S. 801 [15-801], 15 O.S. 818 [15-818], 15 O.S. 802 [15-802](A), 15 O.S. 804 [15-804], 15 O.S. 805 [15-805], 15 O.S. 806 [15-806], 69 O.S. 303 [69-303] [69-303](A), 69 O.S. 303 [69-303](B), 69 O.S. 304 [69-304] (MICHAEL SCOTT FERN)
The Attorney General has received your request for an official opinion asking, in effect:
1. Does the Oklahoma Transportation Commission have lawful authority to promulgate administrative rules and regulations requiring contractors doing business with the Department of Transportation to enter into a binding arbitration agreement for the resolution of disputed claims as a condition to doing business with the Department?
2. If the Commission possesses such authority, are such agreements, and the decisions of any arbitrators thereunder, enforceable against the contractor?
3. Under any such program of arbitration, may the agreement validly prohibit licensed attorneys from eligibility to serve as arbitrators?
4. Under any such program, may the agreement validly prohibit an aggrieved claimant from being fully and actively represented by legal counsel at the proceeding?
Article XVI , Section 1 of the Oklahoma Constitution directs the Legislature to establish a Department of Highways with power to provide for building and maintaining public roads. Ruble v. Department of Transportation, 660 P.2d 1049 (Okl. 1983). To effectuate this mandate, 69 O.S. 301 (1981) establishes the State Highway Commission (a/kla State Transportation Commission) and the Department of Highways (alk/a Department of Transportation). Title 69 O.S. 303(a) (1981) describes the Commission as an "advisory, administrative and policy-making board," and subsection 69 O.S. 303(b) sets forth statements partic ularly pertinent to your inquiries. 69 O.S. 303(b) states, in pertinent part:
In addition to its other powers and duties, as herein defined, the Commission shall have the following specific powers and duties:
(3) To prescribe, rules, regulations, and policies for the transaction of its business, and for the letting of all contracts and purchases;
(5) Except as otherwise provided herein, to let or supervise the letting of all contracts for construction or improvements of state highways, or any contract for road or bridge construction or improvement where the work is being done in whole or in part with state or federal monies.
Title 69 O.S. 304 (1981) goes on to add, in part:
(a) The construction and maintenance of the state highway system, and all work incidental thereto, shall be under the general supervision and control of the Transportation Commission.
(b) The Commission shall have power to make all final decisions affecting the work provided for herein, and all reasonable rules and regulations it may deem necessary, not inconsistent with this code, for the proper management and conduct of such work, and for carrying out the provisions of this article, in such manner as shall be to the best interest and advantage of the people of this state.
(c) The Commission shall have power and authority to contract for and purchase, lease or otherwise acquire any tools, machinery, supplies, material or labor needed or to be needed for such work, having the deliveries of such articles made as actually needed, and to pay for engineering, preparation of plans and specifications, costs of advertising, engineering supervision and inspection and all expenses and contingencies in connection with the construction and maintenance of the state highway system. When quality and prices are equal, preference shall be given materials produced within the State of Oklahoma and highway construction companies domiciled, having and maintaining offices in and being citizen taxpayers of the State of Oklahoma.
Acting pursuant to these general grants of authority, the Transportation Commission has promulgated rules mandating that any contractor that does business with the Department must agree that any dispute arising between the contractor and the Department as to any question of fact, including any claim for additional compensation, must be resolved through an arbitration procedure as set forth currently in Article VII-C of the Commission's Rules, as amended February 2, 1987. Without going into great detail, this procedure contemplates that the contractor must first submit a written claim within prescribed time limits to the Department Resident Engineer. If the claim is denied, the contractor may appeal to the Department Division Engineer. If the contractor is dissatisfied with the Division Engineer's determination, he may seek a hearing before a specifically constituted Board of Claims.
This Board of Claims consists of one person to be selected, in order of preference, if possible, from a list of three names submitted by the contractor, a second person similarly chosen from a list of three names submitted by the State Transportation Director, and a third person selected from a list of three names submitted by the first two panel members. Article VII-C(2)(b) of the Commission's Rules states that "Board members will consider the Contractor's claim presented to them" and render their findings and decision to the Transportation Director in writing. This section goes on to provide:
The decision of the Board shall be binding on the Transportation Commission and the Contractor.
Article VII-C(1)(e)(8) of these rules specifies that no Board of Claims member may be a lawyer by profession. Article VII-C(2)(d) states that while each side may have legal counsel present at these three stages of the process for consultation purposes, such counsel may not present any argument. All persons doing business with the Department as contractors on public works projects are required to sign contracts by which they agree to be bound by such terms. You ask of the validity of this administratively-mandated system, its enforceability, and its treatment of legal practitioners.
As a general proposition, a public officer or agency possesses those powers which are expressly granted by statute or constitutional provision, and those powers, by implication, which are necessary for the due and diligent exercise of the authority expressly granted, or such as may be fairly implied therefrom. Marley v. Cannon, 618 P.2d 401 (Okl. 1980). The authority of state boards to make rules for their various procedures does not, however, include the authority to make rules which in effect extend their powers beyond those granted by statute. Boydston v. State, 277 P.2d 138 (Okl. 1954). In this instance, the terms of 69 O.S. 303 and 69 O.S. 304 (1981) provide ample basis for the Commission to adopt a rule denominating how disputes concerning extra compensation claimed to be owed, and the like, will be resolved. Due to the adoption of the Oklahoma version of the Uniform Arbitration Act, 15 O.S. 801 — 15 O.S. 818 (1981), resort to arbitration mechanisms is favored in the State in the resolution of disputes. Voss v. City of Oklahoma City, 618 P.2d 925, 928 (Okl. 1980).
Arbitration is the referral of a dispute by the voluntary agreement of the parties to one or more impartial arbitrators for a final and binding decision as a determination of their dispute. Voss, supra at 927. An arbitration award is made on the basis of evidence and argument presented by the parties, who agree in advance to accept the decision of the arbitrator as final and binding. Id.
At common law, such contracts, insofar as they dealt with agreements to be bound in future disputes by the decision of an arbitrator, were declared unenforceable and contrary to public policy, due to their attempts to contractually divest a court of jurisdiction to hear a dispute. Boughton v. Farmers Insurance Exchange, 354 P.2d 1085 (Okl. 1960); Wilson v. Gregg, 255 P.2d 517 (Okl. 1953); and Burke Grain Co. v. Stinchcomb, 173 P. 204 (Okl. 1918). The Voss decision, supra, even termed such agreements, at common law, to have been "unlawful." 618 P.2d at 927, n. 3.
This disfavor at common law was supplanted in 1978 by the adoption of Oklahoma's version of the Uniform Arbitration Act, codified at 15 O.S. 801 — 15 O.S. 818 (1981). 15 O.S. 802(A) of the Act states:
This act shall apply to a written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties. Such agreements are valid, enforceable and irrevocable, except upon such grounds as exist at law or in equity for the revocation of any contract. This act shall not apply to collective bargaining agreements or contracts with reference to insurance except for those contracts between insurance companies.
A point to note at this juncture is that a prerequisite to the validity of any agreement to arbitrate disputes is, in fact, a contract mutually and knowingly entered into between the parties calling for the submission of an issue to arbitrators. Voss, supra at 928. Under the Act, where arbitration has been contracted for, it constitutes a substantive and mandatory right. Id. Under the questions posed by you, it is not the adoption of Section VII-C which would make resort to arbitration mandatory and enforceable. Rather, it is the entering into a contract containing an arbitration clause between a contractor and the Department which would trigger the substantive nature of the rights contracted for. 15 O.S. 802(A) (1981).
Assuming the existence of such an agreement, the terms of the Arbitration Act are automatically read into every such agreement. Id.; see General Motors Corp. v. Oklahoma County Bd. of Equalization, 678 P.2d 233, 237-38 (Okl. 1983). Indeed, given the "unlawful" nature of agreements at common law involving the disposition of future disputes, absent the statute's blessing, such undertakings would be wholly unenforceable.
Your final two questions ask for review of the restrictions on members of the legal profession as contemplated in Section VII-C of the Commission's Rules, and as contained in the standard contract for contractors by reference. Lawyers may neither sit as arbitrators nor actively represent contractors at any phase of the arbitration process.
Under the Arbitration Act's terms, contracting parties are given broad range in determining how arbitrators are to be appointed and empowered. 15 O.S. 804 — 15 O.S. 805 (1981). The Oklahoma Supreme Court, in Voss, stated, on this point:
Parties are relatively free to select individuals as arbitrators although certain minimum standards of knowledge, impartiality and moral character are required which tend to equate a private arbitrator with a public judge. 618 P.2d at 927.
Arbitration statutes are generally favored by courts because they provide substantial justice by an immediate and speedy resolution with a minimum of court interference. Voss, supra at 928. Given the broad discretion afforded to parties by the Act relative to the selection of arbitrators, the parties are free to declare that no lawyers can be eligible to serve in such a capacity in an individual dispute.
A different scenario unfolds as to a requirement that attorneys may only consult with contractors during this process, rather than actively represent them by presenting evidence and making argument, and the like. Title 15 O.S. 806 (1981) states:
A party has the right to be represented by an attorney at any proceeding or hearing under this act. A waiver of such right prior to the proceeding or hearing shall have no force or effect.
This provision is read into every arbitration agreement. See General Motors, supra. It is a declaration of public policy which the Commission has no authority to abrogate, either by rule or by contract. Id.
It is, therefore, the official opinion of the Attorney General that:
1. The Oklahoma Transportation Commission has lawful authority, under 60 O.S. 303 — 60 O.S. 304 (1981), to promulgate administrative rules an,d regulations requiring contractors doing business with the Department of Transportation to enter into a binding arbitration agreement for the resolution of disputed claims as a condition to doing business, with the Department;
2. Such an agreement to arbitrate future disputes, once contractually entered into by the Department and the contractor, is valid and enforceable, by virtue of 15 O.S. 802(A) (1981);
3. The terms of such an arbitration agreement may validly exclude attorneys from eligibility to serve as arbitrators; and
4. The terms of such an arbitration agreement may not validly prohibit a party from being actively represented by legal counsel at all stages of the process, by virtue of 15 O.S. 806 (1981). (MICHAEL SCOTT FERN) (ksg)