Mark A. CANNON, Petitioner,

v.

The Honorable Donald C. LANE, Judge of the District Court, Tulsa County, Oklahoma, Respondent.

No. 79224.

Supreme Court of Oklahoma.

March 30, 1993.

As Corrected April 13, 1993.

Rehearing Denied Jan. 20, 1994.

**1236**

Patrick E. Carr, Sidney A. Martin, II, Carr & Carr Attys., Tulsa, for petitioner.

Elise Dunitz Brennan, Susan Stidham Brandon, Doerner, Stuart, Saunders, Daniel & Anderson, Tulsa, for respondent/real party in interest.

ALMA WILSON, Justice:

This is an original proceeding in mandamus to compel the Honorable Donald C. Lane, Judge of the District Court, Tulsa County, Oklahoma (respondent) to withdraw his order of February 11, 1992. That order required the petitioner to arbitrate his dispute with Multimed Health Plan, Inc., doing business as PacifiCare of Oklahoma. Because this is a matter of public interest, we assume original jurisdiction in the exercise of our general superintending control over all inferior courts under Article 7, § 4 of the Constitution of the State of Oklahoma.

The pertinent facts of the case are undisputed. The petitioner is a state employee and participates in the health maintenance organization, PacifiCare. PacifiCare would not certify him for surgery for hemorrhoids, so he secured surgery outside PacifiCare and sought reimbursement, which PacifiCare refused. The petitioner then sued PacifiCare. He sought reimbursement for the surgery and alleged a bad faith claim. PacifiCare filed a motion for compulsory arbitration, as required by its plan. The trial court granted the motion. The petitioner filed an application with this Court to assume original jurisdiction and a petition for a writ of prohibition or, in the alternative, mandamus.

■ The central issue in this case can be resolved by construction of 15 O.S.1991, § 802(A), a section of the Uniform Arbitration Act. Subsection A provides:

> This act shall apply to a written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties. Such agreements are valid, enforceable and irrevocable, except upon such grounds as exist at law or in equity for the revocation of any contract. This act shall not apply to collective bargaining agreements or contracts with reference to insurance except for those contracts between insurance companies.

The Uniform Arbitration Act states explicitly that it does not apply to "contracts with reference to insurance" except for an inapplicable exception. The trial court found that a health maintenance organization is not an insurance company "because its purpose is to provide services and not reimburse expenditures" and the court concluded that PacifiCare did not fall within the provisions of § 802. So the issue is whether the services provided by contract from a health maintenance organization to a member is a "contract with reference to insurance" and therefore excepted from the Uniform Arbitration Act.

In an attempt to show that PacifiCare does not come within the exception it cites the definition of insurance found in 36 O.S.1991, § 102. That section provides: "'Insurance' is a contract whereby one undertakes to indemnify another or to pay a specified amount upon determinable contingencies." PacifiCare argues that it does not indemnify others and does not agree to pay a specified amount upon the occurrence of some event. PacifiCare would make "insurance contracts" and "contracts with reference to insurance"

equivalent terms. They are not. "With reference to" has been defined as "[t]he state of being related or referred."[1] Is a contract for health insurance related to a contract for health services as provided by a health maintenance organization?

Although the legislature does draw some distinctions between health maintenance organizations and health insurance organizations,[2] there are noted similarities. Health maintenance organizations are licensed by the State Department of ·Health, but the application to that department for a license must be forwarded to the State Insurance Commissioner to review the application "for fiscal responsibility and fiducial integrity."[3] Title 36, "Insurance," includes Article 6 entitled "Authorization of Insurers and General Requirements." Section 624 includes a health maintenance organization as "an insurance company of any nature or character whatsoever."[4] The section provides for reporting of premiums, fees, taxes and penalties for failure to timely pay the taxes. Health maintenance organizations are alternatives to health insurance. With both health maintenance organizations and health insurance companies, periodic payments are made (or withheld from salaries) to help pay for health care when needed. With large organizations, such as the State of Oklahoma, employees are offered the option of selecting a health maintenance organization or a health insurance company.[5] We hold that the contract between the State of Oklahoma and Pacificare is a contract with reference to insurance and it is expressly excluded from the provision of the Uniform Arbitration Act.

We must now decide the legal effect of the arbitration agreement between the State and PacifiCare. The subscriber agreement between the State and PacifiCare provides for the Member Service Department to make the initial determination concerning complaints. If the member is dissatisfied with the initial determination, the member may request a hearing before the Member Satisfaction (Grievance) Committee. If the complaint still is not resolved to the member's satisfaction, the member may request a redetermination by the Board of Directors. If the member is still dissatisfied, the subscriber agreement makes the following provisions:

> If Member is still dissatisfied after the Board of Director's decision, the parties agree to submit the complaint in issue to

---

1. *The American Heritage Dictionary* 1038 (2d College ed. 1985).

2. See 63 O.S.1991, §§ 2501–2510.

3. 63 O.S.1991, § 2504(A).

4. 36 O.S.1991, § 624 of Article 6 provides:

> Every insurance company, copartnership, insurance association, interinsurance exchange, person, insurer, nonprofit hospital service and medical indemnity corporation, or *health maintenance organization;* doing business in the State of Oklahoma in the execution or exchange of contracts of insurance, indemnity *or health maintenance services, or as an insurance company of any nature or character whatsoever, hereinafter referred to in this article as an insurance company,* or company, shall annually, on or before the last day of February, report under oath of the president or secretary or other chief officer of such company to the Insurance Commissioner, the total amount of direct written premiums, membership, application, policy and/or registration fees charged

during the preceding calendar year, or since the last return of such direct written premiums, membership, application, policy and/or registration fees was made by such company, *from insurance of every kind* upon persons or on the lives of persons resident in this state, or upon real and personal property located within this state, and/or upon any risks insured within this state, provided, that with respect to the tax payable annually, considerations received for *annuity contracts and payments received by a* health maintenance organization for the Secretary of Health and Human Services pursuant to a contract issued under the provisions of 42 U.S.C., Section 1395mm(g) shall no longer be deemed to be premiums for insurance and shall no longer be subject to the tax imposed by this section.... [Emphasis added.]

5. 74 O.S.1991, § 1306(j) provides that the State Employees Group Insurance Board may select and contract with federally qualified health maintenance organizations for consideration by *state employees as an alternative to the state self-insured health plan.* We note that Chapter 37, in which § 1306 is included, is entitled "State Em-

binding arbitration before the American Arbitration Association. A request for binding arbitration must be submitted to the Member Service Department within sixty (60) days of receipt of the Board of Director's redetermination decision. If a request for arbitration is not submitted within sixty (60) days, the decision of the Board of Directors shall be final and binding upon the parties. The time periods herein may be exceeded due to extraordinary circumstances. The aggrieved party will be notified in writing of the need for any sucy [sic] extensions.

Upon submission of a dispute to the American Arbitration Association, Member and PacifiCare agree to be bound by the rules of procedure and decision of the American Arbitration Association.

PACIFICARE AND MEMBER UNDERSTAND THAT BY ENTERING INTO THIS AGREEMENT, THEY ARE GIVING UP THEIR CONSTITUTIONAL RIGHT TO HAVE ANY SUCH DISPUTE DECIDED IN A COURT OF LAW BEFORE A JURY AND INSTEAD ARE ACCEPTING THE USE OF ARBITRATION.

The pertinent portion of the handbook distributed to each state employee participating in PacifiCare summarizes the agreement as follows:

In the event of any difference between any member and PacifiCare pertaining to any medical malpractice claims, personal liability claims relating to the performance of this Agreement, and contract disputes, it is agreed that the same shall be submitted to binding arbitration and governed by the rules and procedures of the American Arbitration Association.

The agreement purports to absolutely require binding arbitration and if neither party requests arbitration then it purports to lock in the decision of the Board of Directors of PacifiCare as "final and binding" as to any existing controversy and any future controversy.

Generally, agreements to submit future controversies to arbitration are contrary to public policy. The contract under dispute in *Wilson v. Gregg,* 208 Okla. 291, 255 P.2d 517 (1953) provided that every dispute, difference or question was to be referred to arbitration of three disinterested persons. *Wilson,* 255 P.2d at 518. The contract was made before any dispute arose. The *Wilson* court observed:

[W]e find no case, and none is cited, in which an arbitration agreement providing for the submission of all future controversies to arbitration has been upheld. Generally arbitration agreements to submit controversies arising in the future have been held unenforceable because they deprive the courts of jurisdiction and are contrary to public policy. The decisions of some courts hold that such agreements are void. Other courts hold that such agreements are voidable and still others hold that such agreements are not enforceable.

*Wilson,* 255 P.2d at 519.

In *Boughton v. Farmers Ins. Exch.,* 354 P.2d 1085 (Okla.1960), an insurance company attempted to enforce an arbitration clause in its contract with an insured. As in the case at bar, the insured made known to the insurer that she would not submit the issues to arbitration and would not submit to any arbitration proceedings. The *Boughton* court held that the arbitration provision deprived the insured of a judicial examination and determination of the issues involved and under the authority of *Wilson,* such a provision was contrary to public policy and unenforceable. *Boughton,* 354 P.2d at 1089. That court stated that the insurance company had prepared the policy and was charged with knowledge that stipulations to arbitrate future controversies were unenforceable and contracts restricting a party from enforcing his rights by the usual legal proceedings in the ordinary tribunals were void. *Boughton,* 354 P.2d at 1089–1090. Accordingly, the arbitration clause in the contract before this Court is unenforceable because it purports to bind the health maintenance organization member to arbitrate any contractual disputes.

Title 15 O.S.1991, § 216, the statute cited as support for the *Boughton* holding,

provides: "Every stipulation or condition in a contract, by which any party thereto is restricted from enforcing his rights under the contract by the usual legal proceedings in the ordinary tribunals ... is void." This statute declares the provision in PacifiCare's subscriber agreement purporting to bind a member to the decision of the Board of Directors or to arbitration, to be void.

■ PacifiCare argues that the petitioner had knowledge of the binding arbitration provision in the Member's Handbook and that he is bound by the contract. PacifiCare claims that the State and Education Employees Group Insurance Board acted as agent for the petitioner and could waive his right to proceed in district court. We reject this argument. Even if the petitioner himself had agreed to the provision, under the common law and by statute, as noted above, the agreement is void on its face because an arbitration agreement providing for the submission of all future controversies to arbitration is contrary to public policy and unenforceable.[6] *Boughton*, 354 P.2d at 1089. To reiterate, the contract between PacifiCare and its members falls within the exception to the Uniform Arbitration Act because it is a contract related to insurance. Under the authority of *Wilson, Boughton,* and 15 O.S. 1991, § 216, such a contract is void.[7]

■ As the contractual provision is void, should this Court issue a writ to prohibit the

trial court from enforcing its order to arbitrate? *James v. Rogers,* 734 P.2d 1298, 1299 (Okla.1987) noted the elements necessary to the issuance of a writ of prohibition:

> Before a writ of prohibition may issue, a petitioner must show: (1) a court, officer, or person has or is about to exercise judicial or quasi-judicial power; (2) the exercise of said power is unauthorized by law; and (3) the exercise of that power will result in injury for which there is no other adequate remedy. *Umholtz v. City of Tulsa,* 565 P.2d 15, 18 (Okla.1977). If petitioner fails to establish any of the three elements, the writ must be denied.

Likewise, a writ of mandamus may not be issued where there is a plain and adequate remedy in the ordinary course of the law. *Garner v. City of Tulsa,* 651 P.2d 1325, 1329 (Okla.1982). Whether a remedy is adequate is a question of fact to be determined by the court as a matter of discretion in the light of the facts of the particular case. *Garner,* 651 P.2d at 1329. PacifiCare argues in its brief that the petitioner has failed to establish that extraordinary relief in the form of a writ of mandamus or writ of prohibition should be granted. PacifiCare claims that the order granting the application to compel arbitration can be questioned upon the appeal of the arbitrator's award. In the case of *State ex rel. Williamson v. Longmire,* 281 P.2d 949

---

ployees Group *Insurance* Act." (Emphasis added.)

6. PacifiCare cites *Madden v. Kaiser Foundation Hospitals,* 17 Cal.3d 699, 552 P.2d 1178, 131 Cal.Rptr. 882 (1976) to support its argument that the State and Education Employees Group Insurance Board had the authority to act as agent for the petitioner in agreeing to arbitration. The *Madden* court stated the issue as whether an agent or representative, contracting for medical services on behalf of a group of employees, had implied authority to agree to arbitration of malpractice claims of enrolled employees arising under the contract. That court determined that the Board of Administration of the State Employees Retirement System had the authority to enter into a contract for a group health, which provided for arbitration of malpractice claims. We do not address this issue because even if an authorized agent negotiated the Oklahoma contract, the contract for arbitration would be void under the reasoning above.

7. Because we hold that the contract before this Court is one "with reference to insurance" and therefore an exception to the Uniform Arbitration Act, we need not address the constitutional issue of whether the contract for arbitration of future disputes deprives the petitioner of a jury trial and violates his constitutional rights under Article 23, § 8 of the Constitution of the State of Oklahoma. The subscriber agreement between the State and PacifiCare acknowledges that the member has the constitutional right to have a dispute decided in a court of law before a jury, and gives notice of the waiver of that right thereby permitting arbitration. That waiver was not expressly included in the member's handbook. For a discussion of that issue see the concurring and dissenting opinions in *Raines v. Independent School Dist. No. 6,* 796 P.2d 303 (Okla.1990). *Cf. Massey v. Farmers Ins. Group,* 837 P.2d 880 (Okla. 1992) (one party may not unilaterally decide to have someone other than a jury determine issues in controversy and thereby destroy the other party's right to a jury trial).

(Okla.1955), this Court granted a writ of prohibition and addressed the issue of the adequacy of a subsequent appeal instead of the granting of a writ:

> We have held that in cases where the inferior tribunal is assuming judicial power not granted by law, inadequacy of a remedy at law is not a necessary prerequisite, if such remedy does not appear *equally* adequate and convenient. *State ex rel. Burford v. Sullivan,* 86 Okl.Cr. 364, 193 P.2d 594; *Blue v. Murray,* Okl., 260 P.2d 1069. [Emphasis in original.]

*Williamson,* 281 P.2d at 956. Additionally we have assumed jurisdiction and granted a writ where public policy, as reflected in the Oklahoma statutes, made the writ of mandamus an appropriate remedy. *Garner,* 651 P.2d at 1329.

■ Given the large number of members of health maintenance organizations, and the fact that the petitioner or any member of a health maintenance organization would have to go through arbitration and subsequent appeal in order to be heard on their health care claims, experiencing substantial delay in receiving benefits to which they may be entitled, we find this case to be a matter of public interest and grant the writ.

Original jurisdiction is hereby assumed. A writ of prohibition is issued prohibiting the Honorable Donald C. Lane, Judge of the District Court, Tulsa County, Oklahoma, from enforcing his order of February 11, 1992, in the case of MARK A. CANNON, an individual, vs. MULTIMED HEALTH PLAN, INC., d/b/a PACIFICARE OF OKLAHOMA, a corporation, case number CJ–91–04279.

WRIT ISSUED.

OPALA, KAUGER and WATT, JJ., and LUMPKIN, S.J., sitting in lieu of SUMMERS, J., who disqualified, concur.

HODGES, C.J., LAVENDER, V.C.J., and SIMMS and HARGRAVE, JJ., dissent.

OPALA, Justice, with whom WATT, Justice, joins, concurring.

The court pronounces today that the arbitration provisions in a contract between the State of Oklahoma and PacifiCare, a health maintenance organization (HMO), are unenforceable. The court rests its rationale on two grounds: (1) the contract in controversy is one "with reference to insurance" and hence *expressly excluded* by 15 O.S.1991 § 802(A) [1] *from the purview* of the Uniform Arbitration Act [Act]; [2] and (2) the arbitration clause is void on its face because an agreement that provides for the submission of all future controversies to arbitration is contrary to 15 O.S.1991 § 216 [3] as well as to public policy.[4] The court saves for another day the issue whether a contract for arbitration of future disputes is violative of Art. 23, § 8, Okl. Const.[5]

I concur in the court's disposition and in its pronouncement. If I were writing today for

1. The terms of 15 O.S.991 § 802(A) provide: "This act shall apply to a written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties. Such agreements are valid, enforceable and irrevocable, except upon such grounds as exist at law or in equity for the revocation of any contract. *This act shall not apply to* collective bargaining agreements or *contracts with reference to insurance except for those contracts between insurance companies.*" (Emphasis added.)

2. 15 O.S.1991 §§ 801 et seq.

3. The terms of 15 O.S.1991 § 216 provide in part: "Every stipulation or condition in a contract, by which any party thereto is restricted from enforcing his rights under the contract by the usual legal proceedings in the ordinary tribunals ... *is void.*" (Emphasis added.)

4. The court relies on *Boughton v. Farmers Ins. Exchange,* Okl., 354 P.2d 1085 (1960), which treats as unenforceable a *promise* to arbitrate a *future* controversy. *Boughton* expresses the common law that was in force before its abrogation by the Uniform Arbitration Act, 15 O.S.1981 §§ 801 et seq., which became effective Oct. 1, 1978.

5. The terms of Art. 23, § 8, Okl. Const., are: *"Any provision of a contract, express or implied, made by any person, by which any of the benefits of this Constitution is sought to be waived, shall be null and void."* (Emphasis mine.)

the court's majority I would go much further. My opinion would *declare that all contracts* which call for submission of future controversies to arbitration are violative of Art. 23, § 8 and hence unenforceable. The terms of § 8 explicitly prohibit promise-based waivers of a constitutional benefit that *may arise* in the course of a party's future contractual dealings.[6] Because our fundamental law absolutely *interdicts* judicial enforcement *of executory ex contractu commitments* to relinquish constitutional rights that may be available in disputes to arise *in futuro*, I would today pronounce as legally infirm *all* agreements which require submission of any future controversy to arbitration.[7]

---

6. *Massey v. Farmers Ins. Group*, Okl., 837 P.2d 880, 890 (1992) (Opala, C.J., concurring in result); *Raines v. Independent School Dist. No. 6*, Okl., 796 P.2d 303, 304–305 (1990) (Opala, V.C.J., concurring); *Dean Witter Reynolds, Inc. v. Shear*, Okl., 796 P.2d 296, 298 (1990); *Long v. DeGeer*, Okl., 753 P.2d 1327, 1330 (1988) (Opala, J., concurring).

7. The terms of Art. 23, § 8 do not target the validity of all waivers by which forensic access is renounced nor all forms of arbitration; their sweep is confined to promise-based surrender of a constitutional benefit. Nothing in § 8 precludes a waiver *in praesenti* or one that is effected by conduct or by declaration (*Raines, supra* note 6 at 306 notes 11–14) (Opala, V.C.J., concurring).