**FARMERS INSURANCE COMPANY, INC., Appellee,**

v.

**ESTATE OF Cecil Clifton STARK, and Shelter Mutual Insurance Company, Appellants.**

No. 86368.

Court of Appeals of Oklahoma, Division No. 2.

April 30, 1996.

Certiorari Denied Sept. 16, 1996.

Michael S. Ryan, John R. Hargrave, Edmonds, Cole, Hargrave, Givens & Witzke, Oklahoma City, for Appellee.

Peter L. Wheeler, Stephen L. Olson, Haven Tobias Pierce, Couch, Hendrickson, Baysinger & Green, Oklahoma City, for Appellants.

## *MEMORANDUM OPINION*

STUBBLEFIELD, Judge.

This is an appeal from an order granting summary judgment to an uninsured motorist insurer in its subrogation action against a tort-feasor and his insurer. The cause was assigned to the accelerated docket pursuant to Civil Appellate Procedure Rule 1.203(A)($l$)(a), 12 O.S. Supp.1995, ch. 15, app. 2. After a review of the record on appeal and applicable law, we reverse and remand with instructions.[1]

The dispute arises from an automobile accident occurring on August 14, 1992, involving Cecil Clifton Stark, who carried $25,000 automobile liability insurance with Shelter Mutual Insurance Company (Shelter), and April Dawn Skibsted, who sustained personal injuries in the accident. Shelter sent Skibst-

---

1. Their opinion is entered after petition for rehearing has been granted and an earlier opinion withdrawn.

ed a release and proposed settlement of her claim against Stark for $25,000—which was represented as policy limits. On or about September 17, 1993, Farmers Insurance Company, the uninsured/underinsured (UIM) carrier for the vehicle Skibsted was driving, tendered $25,000 to Skibsted in substitution of the proposed settlement, explicitly reserving right of subrogation. The "substitution" is specifically provided for in 36 O.S.1991 § 3636(E), which, in pertinent part, provides:

In the event of payment to any person under the coverage required by this section and subject to the terms and conditions of such coverage, the insurer making such payment shall, to the extent thereof, be entitled to the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury for which such payment is made.... Provided further, that if a tentative agreement to settle for liability limits has been reached with an insured tort-feasor, written notice shall be given by certified mail to the uninsured motorist coverage insurer by its insured. Such written notice shall include:

. . . .

2. Written authorization or a court order to obtain reports from all employers and medical providers. Within sixty (60) days of receipt of this written notice, the uninsured motorist coverage insurer may substitute its payment to the insured for the tentative settlement amount. The uninsured motorist coverage insurer shall then be entitled to the insured's right of recovery to the extent of such payment and any settlement under the uninsured motorist coverage....

Claiming Shelter refused its subrogation demand, Farmers sued Stark and Shelter on April 6, 1995, for the $25,000. By amended petition, Farmers named Stark's estate after he had died from causes unrelated to the accident with Skibsted.[2]

The Defendant Estate raised the issue of statute of limitations as a defense, claiming that the action was controlled by the two-year limitation period for tort actions set forth at 12 O.S.1991 § 95 (Third). Farmers maintains this action is one created by statute—by 36 O.S.1991 § 3636(E)(2)—and, therefore, is governed by 12 O.S.1991 § 95 (Second), which provides for three years to bring "an action upon a liability created by statute." Farmers also maintains its cause of action for recoupment of substituted payment did not accrue until the substituted payment was made—September 17, 1993—and that it had three years thereafter to bring the action.

The Estate sought summary judgment based on its statute of limitations contention. However, the trial court found persuasive and followed the guidelines of an unpublished opinion of Division 3 of this court—*Northland v. Nance*, No. 83,084 (Okla. Ct.App., April 12, 1994), *cert. denied*. The trial court, based on *Northland*, ruled against Estate and, pursuant to District Court Rule 13(e), 12 O.S. Supp.1995, ch. 2, app., granted judgment to Farmers. The Estate appeals.

■ The dispute on appeal deals with the appropriate statute of limitations regarding a subrogated claim based on "substitute" payment made pursuant to section 3636(E)(2). The court in *Northland* also addressed the issue of substituted payment under section 3636. Citing *Uptegraft v. Home Insurance Co.*, 662 P.2d 681 (Okla.1983), for the proposition that a UIM insurer's obligation to pay under the policy is not dependent on the insured's right to sue the tort-feasor, the *Northland* court reasoned that the action was one arising from contract, giving the subrogee a three-year period in which to sue—based on a non-written agreement. However, the *Northland* court reached two conclusions with which we cannot agree, and we choose not to follow its result.

The *Northland* court concluded that a subrogated action may be brought, by the party

2. We are told in documentation filed with this court that Shelter was dropped as a party, based on the well-established rule that a liability insurer may not be made a party to a personal injury action. Indeed, such is the rule. However, nothing appears in the summary disposition rec-

ord to that effect. Indeed, contrary to Estate's affirmation, the journal entry of judgment does identify Shelter as a party, and, interestingly, judgment is granted against Defendants. However, this matter is of no consequence with regard to the disposition of this appeal.

subrogated, against the alleged tort-feasor within three years as an action on an express or implied contract, not in writing. 12 O.S. 1991 § 95 (Second). However, the court reached this conclusion based on the statement: "The subrogation rights of the uninsured motorist carrier are of the *conventional* sort: it [*sic*] arises, if at all, from the contractual obligation to the insured." *Northland v. Nance,* No. 83,084, slip op. at 4 (Okla. Ct.App., April 12, 1994). However, this analysis overlooks the fact that the purported tort-feasor was not a party to the insurance contract. Indeed, the rights between the insurer and its insured arise from contract, *but any rights against the tort-feasor, whether those of the insured plaintiff or rights gained by the insurer through subrogation, are not based on contract.*

■ Based on the principle that a statute of limitations does not begin to run against a cause of action until it has accrued, the *Northland* court further reasoned that the insurer's action against the tort-feasor did not accrue until it had substituted payment pursuant to section 3636(E)(2). However, this has never been the rule in regard to subrogation rights. A subrogee does not obtain a longer limitations period based merely on the fact that it did not gain its subrogation rights at the same time that its insured's claim accrued. A subrogee steps into the shoes of the plaintiff "subject to all legal and equitable defenses which the [tort-feasor] may have against the [plaintiff]." *Moore v. White,* 603 P.2d 1119, 1121 (Okla. 1979). A subrogee acquires no rights greater than those of the party whose claim it has paid. *United States v. Munsey Trust Co.,* 332 U.S. 234, 242, 67 S.Ct. 1599, 1603, 91 L.Ed. 2022 (1947).

■ In *Uptegraft,* the case specifically relied on by the *Northland* court, the court held that an insured's rights against its UIM insurer were not lost even though the insured did not bring its lawsuit against the tort-feasor within the limitations period. Implicit in the *Uptegraft* court's holding is that the insurer's subrogation rights were destroyed, and the court struggled with whether this constituted such "affirmative acts or prejudicial conduct" so as to "*ipso facto* discharge the insurer from liability upon its uninsured motorist coverage." *Uptegraft,* 662 P.2d at 687.[3] If payment of a claim was the event that caused a subrogation right to accrue, thereby giving the subrogee an extended limitation period to bring its action against the third party, then the *Uptegraft* court's concerns were for naught. A claim obtained through subrogation is simply not subject to the normal rule of accrual of a cause of action. The subrogee steps into the shoes of its claimant and takes the claim subject to defenses based on the date of accrual to the claimant.

We also reject the contention that 36 O.S. 1991 § 3636, creates a cause of action so that 12 O.S.1991 § 95 (Second), and its three-year limitation period for "an action upon a liability created by statute" would be applicable. The statute governs the relationship between an UIM insurer and its insured but does not create or purport to modify in any manner the claim against the tort-feasor. The tort-feasor's liability, if any, is not "created" by this statute. It flows from the acts and occurrences involving the plaintiff, who coincidentally may be an UIM insured.

■ Therefore, we do not choose to follow the reasoning of the court in *Northland.* We believe that the general rule of subrogation dictates that Farmers' rights against the Estate were the same as those of Skibsted. Skibsted had two years from the date of her accident with Stark to bring suit. Farmers' action was not brought within the applicable two-year limitation period and was barred. Accordingly, the judgment of the lower court is REVERSED, and the cause remanded to the lower court with instructions to dismiss.

REVERSED AND REMANDED WITH INSTRUCTIONS.

GOODMAN, P.J., and BOUDREAU, J., concur.

---

**3.** In *Sexton v. Continental Casualty Co.,* 816 P.2d 1135, 1138 (Okla.1991), the court stated that in *Uptegraft,* "we explained that an insurer's loss of subrogation rights due to the running of the statute of limitations on a claim against the tort-feasor could not bar a UM claim by the insured."