# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 97-4243

_____

Charles S. Barker; Express Golf, Inc.,    *
    *
    Appellants,    *
    *   Appeal from the United States
    v.    *   District Court for the
    *   Eastern District of Missouri.
Golf U.S.A., Inc.,    *
    *
    Appellee.    *

_____

Submitted:  May 13, 1998
Filed:   August 20, 1998

_____

Before BOWMAN, Chief Judge, HEANEY, and HANSEN, Circuit Judges.

_____

BOWMAN, Chief Judge.

Express Golf, Inc., a franchisee, and Charles Barker, its owner, sued Golf U.S.A., Inc., the franchisor, for fraud in state court. The case was removed to federal district court on diversity grounds, whereupon Golf U.S.A. moved to dismiss on the ground that an arbitration clause in the franchise agreement required arbitration of the plaintiffs' claims. The District Court[1] granted the motion, and Express and Barker appeal.

_____

[1]The Honorable Charles A. Shaw, United States District Judge for the Eastern District of Missouri.

The facts of the case are as follows. In a franchise agreement dated September 18, 1995, Golf U.S.A., an Oklahoma corporation, granted to Express, a Missouri corporation, the right to operate a golf retail store using Golf U.S.A.'s methods, name, designs, system, and service marks. That same day, Charles Barker, the sole shareholder of Express, agreed to guarantee the obligations of Express under the franchise agreement. The franchise agreement included the following provision:

> Any and all disputes, claims and controversies arising out of or relating to this Agreement, performance hereunder or breach hereof, except for monies owed to Golf USA pursuant to this Agreement and except as described in Paragraph 18.5, shall be resolved by arbitration conducted in Oklahoma County, State of Oklahoma, in accordance with the latest existing Commercial Rules of Arbitration of the American Arbitration Association.

Franchise Agreement para. 18.1, at 29-30. A choice-of-law provision was included, which specified that the franchise agreement "shall be governed by and construed in accordance with the laws of the State of Oklahoma." Id. para. 20.1, at 31. The agreement also contained a provision in 12-point bold-face type that stated, "You acknowledge that You have received a blank copy of this Agreement in time to afford ample opportunity to seek legal counsel, and to analyze the various provisions herein." Id. para. 20.13, at 33.

The retail operation failed less than nine months after the execution of the franchise agreement. Soon thereafter, Express and Barker filed the present action, claiming that fraudulent representations made by Golf U.S.A. about the operation and success of the franchise induced Barker into signing the franchise agreement. Upon removal to federal court, the District Court held that the parties' dispute must be resolved by arbitration pursuant to the arbitration clause contained in the franchise agreement. We affirm.

Our analysis must begin by determining whether the franchise agreement is subject to the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16 (1994). In an attempt to declare a national policy favoring arbitration, Congress passed the FAA mandating the enforcement of arbitration agreements. See 9 U.S.C. § 2. The Supreme Court has held that the FAA applies to arbitration provisions, thereby mandating their enforcement, subject to only two limitations. See Southland Corp. v. Keating, 465 U.S. 1, 10-11 (1984). First, the arbitration agreement "must be part of a written maritime contract or a contract 'evidencing a transaction involving commerce.'" Id. at 11 (quoting 9 U.S.C. § 2). Second, the agreement "may be revoked upon 'grounds as exist at law or in equity for the revocation of any contract.'" Id. (quoting 9 U.S.C. § 2). The District Court found, and the parties do not dispute, that the franchise agreement involves interstate commerce. The parties are located in different states, Oklahoma and Missouri, and the agreement contemplates the transfer of inventory and money between the states. The parties do dispute, however, whether the arbitration clause contained in the franchise agreement is valid.

Initially, we must determine whether it is for the court or an arbitrator to decide the validity of the arbitration clause. Express and Barker claim that the arbitration clause lacks mutuality of obligation, is unconscionable, and violates public policy. The District Court held that these claims should be decided by an arbitrator. We disagree. In Prima Paint Corp. v. Flood & Conklin Manufacturing Co., 388 U.S. 395, 403-04 (1967), the Supreme Court held that a claim of fraud in the inducement of a contract as a whole must go to an arbitrator, but "issue[s] which [go] to the 'making' of the agreement to arbitrate" should be decided by a court. See also Houlihan v. Offerman & Co., 31 F.3d 692, 694-95 (8th Cir. 1994). In this case, the underlying claim is for fraud in the inducement of the entire contract, but that is not the issue with which we are faced today. Rather, Express and Barker assert claims that go to the making of the arbitration agreement itself. Under Prima Paint, a court must decide whether the agreement to arbitrate is valid.

To decide whether the parties' agreement to arbitrate is valid, we look to state contract law. See Perry v. Thomas, 482 U.S. 483, 493-94 n.9 (1987) ("[S]tate law, whether of legislative or judicial origin, is applicable if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally."). We may apply state law to arbitration agreements only to the extent that it applies to contracts in general. See Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 281 (1995). Put another way, we may not invalidate an arbitration agreement under any state law applicable only to arbitration provisions; instead, we may apply only a state's general contract defenses. See Doctor's Assocs. v. Casarotto, 517 U.S. 681, 687 (1996).

The question then becomes one of choice-of-law. Which state's laws are we to apply? Despite a choice-of-law provision in the franchise agreement designating Oklahoma law, Express and Barker argue that Missouri law should apply. No persuasive reason having been advanced for setting aside the choice-of-law provision upon which the parties agreed in their contract, we reject this argument and conclude that Oklahoma law applies.[2]

Express and Barker claim that Golf U.S.A.'s promise to arbitrate is illusory and therefore fails for lack of mutuality. They argue that virtually any claim can be converted into a claim for monies owed to Golf U.S.A. pursuant to the agreement and, as a result, Golf U.S.A. is permitted to litigate any conceivable claim, while they must arbitrate their claims. To resolve this issue, "we are bound to apply [Oklahoma law] as we are able to discern it from the rulings of [Oklahoma's] courts." Jackson v. Anchor Packing Co., 994 F.2d 1295, 1310 (8th Cir. 1993). The Oklahoma courts have not ruled on the issue of whether mutuality of obligation is required in an arbitration clause. For the reasons stated below, we believe that the Oklahoma Supreme Court

---

[2]We find unpersuasive the reasons articulated in the dissenting opinion for declaring the choice-of-law provision invalid.

would hold that mutuality in arbitration clauses is not required.

In Ditto v. Re/Max Preferred Properties, Inc., 861 P.2d 1000, 1004 (Okla. Ct. App. 1993), the court of appeals held unenforceable an arbitration clause that excluded one party from participating in the selection of an arbitrator. In the process, the court considered an argument that the arbitration clause lacked mutuality of obligation. See Ditto, 861 P.2d at 1002. The court cited two cases in distinguishing its case from those that "involve truly one-sided obligations to arbitrate." Id. (citing R.W. Roberts Constr. Co. v. St. Johns River Water Management Dist., 423 So.2d 630, 632 (Fla. Ct. App. 1982) and Arcata Graphics Corp. v. Silin, 399 N.Y.S.2d 738, 738-39 (1977)). The court's consideration of the issue, however, is pure dicta. Id. ("We reject [the lack of mutuality argument] as a proper ground to challenge the clause at issue [because] . . . [t]he trial court expressly rested its decision on the unfairness of the arbitration panel."). Further, the decision in Arcata Graphics to which the court cited has since been abrogated by Sablosky v. Gordon Co., 73 N.Y.2d 133, 136-37 (1989), wherein the New York Court of Appeals expressly held that mutuality is not required in arbitration provisions if there exists consideration for the entire agreement. Thus, we do not read Ditto to indicate that the Oklahoma courts would require mutuality of obligation in arbitration clauses where the entire agreement is supported by consideration.

We are further persuaded that the Oklahoma Supreme Court would not separately require mutuality in arbitration clauses based on the more recent decision of Shaffer v. Jeffery, 915 P.2d 910 (Okla. 1996). In Shaffer, the Oklahoma Supreme Court, in interpreting Oklahoma's arbitration act, rejected the Prima Paint separability doctrine that "the arbitration clause is a severable part of the contract." Id. at 916. In addition, Oklahoma has espoused the policy that "'[t]he whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the others.'" Pierce Couch Hendrickson Baysinger & Green v. Freede, 936 P.2d 906, 911 (Okla. 1997) (quoting Okla. Stat. Ann. tit. 15, § 157 (West 1993)).

Moreover, we find no indication that the Oklahoma Supreme Court would not join the trend established by decisions holding that consideration for a contract as a whole covers the arbitration clause. See Doctor's Assocs. v. Distajo, 66 F.3d 438, 452 (2d Cir. 1995) ("Most courts facing this issue have arrived at the same conclusion [that consideration for the entire contract is sufficient to support the arbitration clause].") (citing cases), cert. denied, 517 U.S. 1120 (1996); see also Restatement (Second) of Contracts § 79 (1979) ("If the requirement of consideration is met, there is no additional requirement of . . . 'mutuality of obligation.'"). Finally, "[a] doctrine that required separate consideration for arbitration clauses might risk running afoul of [the strong federal policy favoring arbitration]." Doctor's Assocs., 66 F.3d at 453. For all these reasons, we conclude that, under Oklahoma law, mutuality of obligation is not required for arbitration clauses so long as the contract as a whole is supported by consideration.[3] In this case, the parties do not contend that the franchise agreement lacks consideration.

---

[3]The dissenting opinion relies on an unpublished opinion by the Oklahoma Court of Appeals in concluding that Oklahoma law requires mutuality of obligation in arbitration agreements and that this clause is thus violative. See Neighbors v. Lynn Hickey Dodge, Inc., No. 85676 (Okla. Ct. App. Aug. 6, 1996) (withdrawn from publication). Neighbors, however, should not be relied upon. After the court of appeals in Neighbors rendered its decision and released the opinion for publication, one of the parties petitioned to the Oklahoma Supreme Court for certiorari. On November 12, 1996, the Oklahoma Supreme Court denied certiorari and issued an order mandating that the opinion be withdrawn from publication. See Order Nov. 12, 1996. This overt act by the Oklahoma Supreme Court commands our restraint from relying on or citing to the opinion because we do not know the reason for the withdrawal. Of course, one possibility is that the supreme court did not agree with the result. We find it unlikely, as the dissenting opinion suggests, that the opinion may have been withdrawn because it applies settled law. Our discussion in the text of the opinion illustrates that the issue is far from settled in the Oklahoma courts. The Neighbors opinion lacks precedential value, see 8th Cir. R. 28A(k); Okla. Sup. Ct. R. 1.200(b)(5) (unpublished opinions "shall not be considered as precedent by any court or cited in any brief or other material presented to any court."), and, in these circumstances, also lacks persuasive value.

We also reject Express and Barker's argument that the arbitration clause is unconscionable, void, and unenforceable. We dismiss the notion that, because the contract is standardized, the arbitration provision should be void. Unconscionability generally requires a showing that one party lacked a meaningful choice as to the inclusion of the challenged provision and that the challenged provision unreasonably favors the other party. See Coblentz v. Oklahoma Farm Bureau Mut. Ins. Co., 915 P.2d 938, 940 (Okla. Ct. App. 1995). No such showing has been made in this case. We similarly find that the clause does not violate public policy. See Freeman v. Prudential Sec., Inc., 856 P.2d 592, 594 (Okla. Ct. App. 1993) ("Ordinarily, agreements of parties to bind themselves to mandatory arbitration are favored.").

We also reject Express and Barker's final argument that Golf U.S.A. waived its right to arbitrate by filing with the District Court a claim for attorney fees after the District Court's dismissal. "[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues [such as an allegation of waiver] should be resolved in favor of arbitration . . . ." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983). We will find that a party waived its right to arbitrate where that party "(1) knew of an existing right to arbitration; (2) acted inconsistently with that right; and (3) prejudiced the other party by these inconsistent acts." Ritzel Communications, Inc. v. Mid-American Cellular Tel. Co., 989 F.2d 966, 969 (8th Cir. 1993) (citing Stifel, Nicolaus & Co. v. Freeman, 924 F.2d 157, 158 (8th Cir. 1991)). In Ritzel, the district court denied several defendants' motion for arbitration, and they appealed. While the appeal was pending, those defendants continued to litigate the merits of the case in district court. They filed answers, responded to interrogatories and requests for production, participated in depositions and pre-trial conferences, and filed numerous motions and documents in preparation for trial. The case was eventually tried in a six-day bench trial and judgment was entered against the defendants. We held that the defendants had waived their right to arbitration "[b]y failing to make the simple effort of requesting a stay in this court and by proceeding to trial on the merits in the district court." Id. at 970 (emphasis added). In this case, Golf U.S.A. has not acted

inconsistently with its right to arbitration because Golf U.S.A. has not attempted to litigate the merits of the case. To the contrary, it has resisted litigation and has persuaded the District Court to dismiss the plaintiffs' lawsuit in favor of arbitration. Furthermore, Express and Barker have not shown any prejudice to themselves. Even if the District Court grants Golf U.S.A.'s pending motion for attorney fees, that is not prejudice to Express and Barker for purposes of the rules applicable in determining whether a waiver of a right to arbitration has occurred.

In conclusion, we believe that the arbitration provision is valid upon "grounds as exist at law," 9 U.S.C. § 2, and therefore hold that the FAA mandates the enforcement of the arbitration clause. We affirm the judgment of the District Court dismissing the complaint.

HEANEY, Circuit Judge, dissenting.

I respectfully dissent. As a preliminary matter, I believe that Missouri law, rather than Oklahoma law, applies. "Federal district courts must apply the choice of law rules of the state in which they sit when jurisdiction is based on diversity of citizenship." Whirlpool Corp. v. Ritter, 929 F.2d 1318, 1320 (8th Cir. 1991) (citing Klaxon Co. v. Stentor Elec. Co., 313 U.S. 487, 496 (1941)). We review de novo the district court's determination of which state's law to apply. See Salve Regina College v. Russell, 499 U.S. 225, 230 (1991).

Express filed this case in the Eastern District of Missouri. Therefore, we apply Missouri's choice of law rules. Missouri courts follow the Restatement (Second) of Conflicts when analyzing contractual agreements.[4] See Fruin-Colnon Corp v. Missouri

---

[4] Section 187 of the Restatement provides:

(1) The law of the state chosen by the parties to govern their contractual

Highway & Transp. Comm'n, 736 S.W.2d 41, 44 (Mo. 1987).  Because Missouri has greater contacts, its law would govern the case absent a valid choice of law by the parties.  See Restatement (Second) Conflicts § 187(1)(b).  Having carefully reviewed the record, I also find that Missouri has a materially greater interest in the effect of the forum-selection clause than Oklahoma.  Id.  Finally, to determine whether the choice of law provision is valid, we must ask whether the arbitration clause at issue violates a fundamental policy of Missouri.  Id.  I conclude that it does.

In Electrical & Magneto Service Co. v. Ambac International Corp., 941 F.2d 660 (8th Cir. 1991), our court reviewed Missouri statutes concerning franchise agreements and concluded that "the Missouri Legislature created a legislative presumption that franchisees are in an inferior bargaining position with respect to franchisors and thus are entitled to protection from the oppressive use of the franchisor's superiority."  Id. at 663 n.3.  Although the majority is correct that "we may not invalidate an arbitration

---

rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.

(2)  The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to the issue, unless . . .

. . .

  (b)  application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which . . . would be the state of the applicable law in the absence of an effective choice of law by the parties.

Restatement (Second) Conflicts § 187 (1988).

agreement under any state law applicable only to arbitration provisions[,]" <u>ante</u> at 4, I would invalidate this arbitration agreement, because rather than single out specific protections afforded only to arbitration agreements under Missouri law, the Missouri legislative scheme at issue "is designed to regulate the marketplace to the advantage of those traditionally thought to have unequal bargaining power as well as those who may fall victim to unfair business practices." <u>Id.</u> at 663.  In my judgment, the arbitration provision that allows Golf U.S.A. to sue in court, but requires Express to arbitrate without the possibility of ever receiving a jury trial, violates a fundamental policy under Missouri law.

The Missouri Supreme Court has explicitly approved the legislative scheme designed to protect Missouri franchisees and has invalidated a forum-selection clause where the clause was "unreasonable" and unfairly prejudiced the franchisee.  <u>See</u> <u>High Life Sales Co. v. Brown-Forman Corp.</u>, 823 S.W.2d 493, 500 (Mo. 1992).  In agreeing with our <u>Ambac</u> decision and in interpreting Missouri franchise law, the court in <u>High Life</u> stated:  "The Eighth Circuit Court of Appeals . . . recognized the strong public policy reflected in Chapter 407 generally" in protecting franchisees and "the very fact that this legislation is paternalistic in nature indicates that it is a fundamental policy." <u>Id.</u> at 498 (citing Restatement (Second) of Conflicts § 187 comment g).  Consistent with holdings of our court and the Missouri Supreme Court, I would invalidate the arbitration clause because under Missouri law it is unreasonable and unfairly prejudices Express.

Even assuming that Oklahoma law applies, the provision at issue violates the Oklahoma Constitution.  The Oklahoma Supreme Court has held that "'[o]ne party may not unilaterally decide to have someone other than a jury determine the issues and thereby destroy the other's right to a jury trial.'" <u>Massey v. Farmers Ins. Group</u>, 837 P.2d 880, 884 (Okla. 1992) (quoting <u>Molodyh v. Truck Ins. Exch.</u>, 744 P.2d 992, 998 (Or. 1987)).

-10-

In my view, Golf U.S.A has the unilateral right to decide to have someone other than a jury determine the issues and thereby destroy Express's right to a jury trial. While Golf U.S.A. can sue in court for anything involving money damages, Express may <u>never</u> demand a jury trial and must submit to arbitration.[5]  My position that the arbitration provision violates Oklahoma law is bolstered by an unpublished opinion[6] of

[5]Once one closely examines the franchise agreement, it is not hard to understand why the arbitration agreement is so truly one-sided.  Clause 16.4.2 of the franchise agreement, for example, provides that Golf U.S.A. may terminate the agreement:

> If You [Express] fail to cure a default hereunder, where such default materially impairs the goodwill associated with the Golf USA name, service mark or logo; but only after You have been given written notice to cure said default and have failed to do so after 24 hours.

(J.A. at A-55).  Because the provision quoted above is so broad, if Golf U.S.A. determined that Express "materially impair[ed] the goodwill associated with the Golf USA name," Golf U.S.A. could terminate the agreement within twenty-four hours notice and sue Express in court for monies owed as a result of the alleged breach.  On the other hand, as in this case, where Express claims that Golf U.S.A. materially breached their agreement, Express is forced to submit to arbitration.

[6]Although Oklahoma Supreme Court rules provide that unpublished opinions have no precedential effect, <u>see</u> Okla. Sup. Ct. R. 1.200(b)(5), and "shall not be . . . cited in any brief or other material presented to any court," courts interpreting this provision have found that unpublished opinions may be used for persuasive value.  <u>See</u>, <u>e.g.</u>, <u>Tillon v. Capital Cities/ABC Inc.</u>, 938 F. Supp. 751, 753 n.1 (N.D. Okla. 1995) ("Although . . . Oklahoma Court of Appeals' unpublished opinion[s] [do] not have precedential value, . . . [they may] be persuasive."); <u>see also</u> <u>Farmers Ins. Group v. Stark</u>, 924 P.2d 798, 800 (Okla. Ct. App. 1996) ("The trial court found persuasive and followed . . . an unpublished opinion . . . of this court."); <u>Employers Mut. Cas. v. Mosby</u>, 943 P.2d 593, 594 (Okla. 1997) (discussing <u>Northland v. Nance</u>, an unpublished court of appeals opinion analyzed in <u>Farmers</u>, and while overruling <u>Nance</u> because a published court of appeals opinion was on point, never suggested that lower courts could not use unpublished opinion for persuasive value).  Our court has also stated that one may cite an unpublished opinion of our court if, although lacking

the Oklahoma Court of Appeals. That court explicitly stated: "Because of the special guarantee of jury trials granted by our constitution, we hold that a contractual provision purporting to grant a <u>unilateral right</u> to elect alternative dispute resolution procedures is not enforceable against the party demanding a jury trial." <u>See</u> <u>Neighbors v. Lynn Hickey Dodge, Inc.</u>, No. 85.676 at 9 (Okla. Ct. App. Aug. 6, 1996) (J.A. at A-111, A-119) (emphasis in original).[7] There can be no doubt that the <u>Neighbors</u> holding is both persuasive and on point with respect to this case.[8]

We are empowered to predict how the Oklahoma Supreme Court would decide this matter. In my view, Oklahoma law compels us to find that the unilateral right that Golf U.S.A. possesses in this case directly contravenes its constitution. It is for this

---

precedential value, it has persuasive value on a material issue and no published opinion would serve as well. <u>See</u> 8th Cir. R. 28A(k). In this regard, I do not agree that the cases cited by the majority sufficiently address the issues before us.

[7] In <u>Cannon v. Lane</u>, 867 P.2d 1235 (Okla. 1993), the Oklahoma Supreme Court stated: "Because we hold that the contract before this Court is one 'with reference to insurance' and therefore an exception to the Uniform Arbitration Act, we need not address the constitutional issue of whether the contract for arbitration of future disputes deprives the petitioner of a jury trial and violates his constitutional rights under . . . the Constitution of the State of Oklahoma." <u>Id.</u> at 1239 n.7. Although the court did not reach the issue, it is clear that, at the very least, it considered the question open whether arbitration clauses may deprive one of the right to a jury trial in violation of the Oklahoma Constitution. This fact, in conjunction with the holdings in <u>Massey</u> and <u>Neighbors</u>, clearly shows the error made by the majority.

[8] Interestingly, the court in <u>Neighbors</u> considered the <u>Shaffer</u> opinion, relied on so heavily by the majority, and yet still found that the arbitration clause violated the Oklahoma Constitution. <u>See</u> <u>Neighbors</u>, 85.676, at 7 (J.A. at A-117.) One may question why the Oklahoma Supreme Court withdrew <u>Neighbors</u> from publication, rather than simply overruling it. Perhaps the reason is that "[o]pinions of the Court of Civil Appeals which apply settled precedent and do not settle new questions of law shall not be released for publication." 20 O.S. 1991, § 30.5.

reason that I respectfully dissent and hope that our court en banc, or the United States Supreme Court, corrects this transparent misapprehension of our role when hearing diversity cases.

A true copy.

Attest.

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.