CYBERTEK, INC., d/b/a Cyber Systems, Inc., and Holly Shaheen, Plaintiffs,

v.

BENTLEY SYSTEMS, INC., Defendant.

No. 4:01CV552.

United States District Court, D. Nebraska.

Jan. 7, 2002.

James D. Sherrets, Theodore R. Boecker, Jr., Sherrets, Boecker Law Firm, Omaha, NE, for plaintiffs.

John P. Passarelli, McGrath, North Law Firm, Omaha, NE, Michael J. Mangan, Matthew Holmwood, Schnader, Harrison Law Firm, Philadelphia, PA, for defendant.

## MEMORANDUM AND ORDER

KOPF, Chief Judge.

This matter is before the court on the defendant's motion to dismiss or stay the action pending arbitration (filing 7). Upon careful consideration of the record and the parties' briefs,[1] the motion will be granted in part and denied in part.

## I. BACKGROUND

Cybertek, Inc., is a Nebraska corporation. Holly Shaheen is the president and CEO of Cybertek, and is alleged to be its sole shareholder. Bentley Systems, Inc., is a Delaware corporation that has its principal place of business in Pennsylvania. On November 20, 1998, Cybertek and Bentley entered into a written contract, designated as a "MicroStation Value Added Reseller (MVAR) Agreement," which authorized Cybertek to distribute Bentley's computer products and services in various states.

Cybertek alleges that it subsequently entered into an agreement with CADD Concepts, Inc. (now operating as Armilian Technology), for the sale of Cybertek's business, excluding equipment and other tangible assets, for the sum of $750,000. It is also alleged that as part of the transaction Shaheen was to receive an executive-level employment contract with Armilian. The deal was made contingent upon Bentley's approval, and the plaintiffs allege that Bentley orally approved the sale. Sometime later, however, Bentley allegedly retracted its approval and stated that it would only approve an assignment of Cybertek's rights under the MVAR Agreement to certain other distributors.

As a result, the plaintiffs claim, the Armilian deal collapsed and Cybertek was forced to sell its business (including a sale of equipment) to TMS Holdings Corporation (d/b/a Itasca Group) and A + CADD Services, Inc., for the total amount of $453,000. Shaheen claims that she lost salary and benefits because her employment contract with Armilian did not materialize, and that she has suffered mental anguish because of Bentley's alleged wrongful conduct.

In addition to not approving the Armilian sale, it is alleged the Bentley failed to pay Cybertek commissions totaling

---

1. Also pending before the court is the defendant's motion for leave to submit a reply brief (filing 11), which will be granted *instanter*.

$131,345 for sales made to the Nebraska Department of Roads (NDOR); Bentley allegedly withdrew these sales from Cybertek's account and then penalized Cybertek $126,048.39 for failing to meet its sales quotas. It is alleged that while Bentley awarded a partial commission of $47,503.75 for the NDOR sales, this sum was applied against the penalty rather than paid to Cybertek. It is also claimed that Bentley's actions in this regard were part of a plan to force a sale of Cybertek to TMS Holdings Corporation and A+CADD Services, Inc., companies in which Bentley had a financial interest.

The plaintiffs initiated this action by filing a petition in the District Court of Douglas County, Nebraska, on September 26, 2001. Bentley removed the action to federal court on October 22, 2001, based on diversity jurisdiction. The pending motion was filed on November 2, 2001, and Bentley has since filed an answer [2] in which it avers as an affirmative defense that the plaintiffs' action is barred by an arbitration clause in the MVAR Agreement (§ 11.11), which provides:

> In the event of any dispute, controversy or claim between the parties arising under or related to this Agreement, the parties shall submit to binding arbitration before a single arbitrator in Philadelphia, Pennsylvania in accordance with the Commercial Arbitration Rules of the American Arbitration Association. The decision of the arbitrators shall be final and binding on the parties, and the judgment upon the award rendered by the arbitrators shall be enforceable in any

court of competent jurisdiction. Each party shall bear its own attorney's fees, costs, and expenses incurred in such arbitration.

Bentley has not moved to compel arbitration, nor is there any evidence that steps have been taken by it to initiate arbitration. The sole issue for determination at this time is whether the plaintiffs' action should either be dismissed or stayed.

## II. DISCUSSION

The plaintiffs do not dispute that the MVAR Agreement is a "contract evidencing a transaction involving commerce" and therefore within the scope of the Federal Arbitration Act (FAA). 9 U.S.C. § 2.[3] Nor do they dispute that Section 11.11 of the MVAR Agreement is a valid arbitration clause. They do dispute, however, that the arbitration clause applies to all of their claims. Specifically, the plaintiffs argue that the pending motion should be denied because: (1) they have alleged that Bentley fraudulently or negligently misrepresented the facts concerning commissions on the NDOR sales; and (2) Shaheen is not a party to the MVAR Agreement.

Responding to the plaintiffs' first argument, Bentley states that: (1) Cybertek additionally has alleged breach-of-contract claims that undoubtedly are covered by the arbitration clause; and (2) in any event, the alleged tort claims "arise under" or "relate to" the agreement, such that all of Cybertek's claims are arbitrable—and therefore subject to dismissal or stay. As for the plaintiffs' second argument, Bent-

**2.** Bentley's answer (filing 12) was filed on November 28, 2001, in accordance with a clerk's order (filing 6) granting Bentley an enlargement of time until such date to answer or to serve a motion under Fed.R.Civ.P. 12(b) or 12(e).

**3.** Section 2 of the FAA provides: "A written provision in any maritime transaction or a

contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

ley contends that Shaheen cannot claim any personal benefit of the MVAR Agreement without also subjecting herself to its arbitration clause. Bentley thus requests that the entire action be dismissed or stayed. Finally, Bentley argues that even if only a portion of the plaintiffs' claims must be submitted to arbitration, the entire action should be stayed pursuant to the court's inherent authority.

## A. Arbitrability of Plaintiffs' Claims

■ Section 3 of the FAA provides that the district court shall stay the trial of an action brought "upon any issue referable to arbitration under an agreement in writing for such arbitration." 9 U.S.C. § 3.[4] A dispute must be submitted to arbitration if there is a valid agreement to arbitrate and the dispute falls within the scope of that agreement. *Lyster v. Ryan's Family Steak Houses, Inc.*, 239 F.3d 943, 945 (8th Cir.2001).[5] The Act declares a "liberal federal policy favoring arbitration agreements." *Id.* (quoting *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)).

■ The purpose of the FAA was to reverse judicial hostility to arbitration

agreements and to place arbitration agreements on equal footing with other contracts. *Keymer,* 169 F.3d at 504 (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991)). Consequently, arbitration agreements are examined in the same light as any other contractual agreement. *Id.* (citing *ITT Hartford Life & Annuity Ins. Co. v. Amerishare Investors, Inc.*, 133 F.3d 664, 668 (8th Cir.1998)).

Although the Court of Appeals stated in *Keymer* that "[w]e apply ordinary state law contract principles to decide whether parties have agreed to arbitrate a particular matter," *id.* (citing *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985 (1995); *Patterson v. Tenet Healthcare, Inc.*, 113 F.3d 832, 834 (8th Cir.1997)), this statement should be qualified as pertaining only to state law that "govern[s] the formation of contracts." *See First Options,* 514 U.S. at 944, 115 S.Ct at 1924. "Interpretation of an arbitration agreement affecting commerce is determined by federal law. *Mediterranean Enterprises, Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1463 (9th Cir.1983) ('Federal law ... applies to our determina-

4. Section 3 of the FAA provides in its entirety:
 If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement shall on application of one of the parties stay the trial of the action, until such arbitration has been held in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

5. *Lyster* involved a motion to compel arbitration under Section 4 of the FAA, 9 U.S.C. § 4, which provides in part:
 A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate

under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement....
 Although Bentley has not moved to compel arbitration, this does not alter the court's analysis regarding the scope of the arbitration agreement. *See Keymer v. Management Recruiters Intern., Inc.*, 169 F.3d 501, 503 n. 2 (8th Cir.1999) ("[T]he arbitrability question is the same in a motion to compel arbitration as in a motion to stay proceedings pending arbitration.").

tion of the scope of this arbitration agreement.'); *ATSA of California, Inc. v. Continental Insurance Co.*, 702 F.2d 172, 175 (9th Cir.1983) ('Determining what claims fall within the class of disputes governed by an arbitration agreement is a question of federal law.'); *American Home Assurance Co. v. Vecco Concrete Construction Co.*, 629 F.2d 961, 963 (4th Cir.1980)." *City of Bismarck v. Toltz, King, Duvall, Anderson*, 767 F.2d 429, 431 (8th Cir.1985).

■ In other words, federal law preempts state law with respect to the interpretation and construction of arbitration agreements that fall within the scope of the FAA. *Webb v. R. Rowland & Co., Inc.*, 800 F.2d 803, 806 (8th Cir.1986). Consequently, even though a contract containing an arbitration clause provides that the law of a particular state shall govern the agreement, a federal district court, in deciding a motion to stay court proceedings under 9 U.S.C. § 3, looks only to federal law in determining the scope of the arbitration clause, and it is immaterial that arbitration is disfavored or limited under the state law.[6] *Id.* at 806 n. 4. *See also Ackerberg v. Johnson*, 892 F.2d 1328, 1334 (8th Cir.1989) (state law cannot determine whether any given claim is arbitrable under the FAA); *Barker v. Golf U.S.A., Inc.*, 154 F.3d 788, 791 (8th Cir.1998) ("We may apply state law to arbitration agreements only to the extent that it applies to contracts in general."), *cert. denied,* 525 U.S. 1068, 119 S.Ct. 796, 142 L.Ed.2d 659 (1999).

■ Arbitrability questions must be considered with a "healthy regard for the federal policy favoring arbitration" and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Keymer,* 169 F.3d at 504 (quoting *Cone,* 460 U.S. at 24–25, 103 S.Ct. 927). Quite simply, there is a general presumption of arbitrability under federal law. *See Lyster,* 239 F.3d at 945 (citing *AT & T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)). "[A]rbitration should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *ITT Hartford,* 133 F.3d at 668 (quoting *IBEW, Local No. 4 v. KTVI–TV, Inc.,* 985 F.2d 415, 416 (8th Cir.1993)).

In the present case, Section 11.10 of the MVAR Agreement provides that Pennsylvania law shall govern. Section 11.11 broadly provides that "any dispute, controversy or claim between the parties arising under or related to this Agreement" shall be submitted to binding arbitration.[7]

### 1. Cybertek's Claims

■ It is obvious from an examination of the plaintiffs' allegations that contractu-

---

**6.** Applicable non-discriminatory state law may provide a helpful reference, however, in formulating the federal rule of decision. *Johnson Controls, Inc. v. City of Cedar Rapids, Iowa,* 713 F.2d 370, 373 (8th Cir.1983).

**7.** In *Fleet Tire Serv. v. Oliver Rubber,* 118 F.3d 619, 621 (8th Cir.1997), it was held that under a "broad" arbitration clause such as this, "even the question of whether the controversy relates to the agreement containing the clause is subject to arbitration." *See also Lebanon Chemical Corp. v. United Farmers,* 179 F.3d 1095, 1101 (8th Cir.1999) (discussing *Fleet Tire* ), *cert. denied,* 528 U.S. 1079, 120 S.Ct. 798, 145 L.Ed.2d 673 (2000). Such holding,

however, appears inconsistent with the United States Supreme Court's 1995 pronouncement in *First Options* that "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." *Id.* at 944, 115 S.Ct. at 1924 (internal quotations and citations omitted). Subsequent Eight Circuit decisions have indicated that arbitrability is a question for the court to decide, unless the parties have clearly agreed to leave that issue to the arbitrator. *See St. Paul Fire and Marine v. Courtney Enterprises,* 270 F.3d 621, 624 (8th Cir.2001); *AgGrow Oils, L.L.C. v. National Union Fire Ins.,* 242 F.3d 777, 780

al disputes form the basis for Cybertek's claims against Bentley. Thus, it is alleged in Count I of the plaintiffs' two-count, state-court petition that Bentley waived any approval rights that it might have under the agreement regarding the proposed sale of Cybertek's business to Armilian (filing 1, exhibit A, ¶ 10); that Bentley "wrongfully, without cause, in bad faith and in violation of its implied covenant of good faith and fair dealing, retracted is previous approval" for the Armilian sale (filing 1, exhibit A, ¶ 12); that Bentley unreasonably and in bad faith withheld its approval of the Armilian sale (filing 1, exhibit A, ¶ 13); and that the plaintiffs were damaged as a direct result of "Bentley's wrongful retraction of [its] previous approval, breach of contract, and [its] bad faith conduct" (filing 1, exhibit A, ¶ 16). Count II alleges that Bentley "has either breached its contract with Cybertek, . . . or it has fraudulently or negligently misrepresented the manner in which it would make payment upon commissions" (filing 1, exhibit A, ¶ 30).

Even though Cybertek has pled alternative theories for recovery of the unpaid commissions, and may also be asserting a tort claim against Bentley for intentional interference with the Armilian purchase agreement,[8] it is fair to conclude that all of Cybertek's claims are subject to compulsory arbitration. Whether commissions are owed to Cybertek, or whether its distributorship was transferable to Armilian, are

issues that either "arise under" or "relate to" the MVAR Agreement. *See N & D Fashions, Inc. v. DHJ Industries, Inc.,* 548 F.2d 722, 728 (8th Cir.1977) (plaintiff's fraud and misrepresentation claim was within the scope of a broad arbitration clause applicable to "[a]ny controversy arising under, or in relation to, this contract"). *See also Morgan v. Smith Barney, Harris Upham & Co.,* 729 F.2d 1163, 1167 n. 4 (8th Cir.1984) ("Arbitration cannot be made dependent on the simple characterization of a dispute as a tort or contract claim.") This interpretation is also consistent with Pennsylvania law. *See Goodwin v. Elkins & Co.,* 730 F.2d 99, 109–10 (3rd Cir.1984) (applying Pennsylvania law, a partner's claims for "fraud" and "breach of fiduciary duty" against the partnership were referable to arbitration where the agreement provided that "[a]ny controversy arising hereunder will be determined by arbitration."). *See also Midomo Co., Inc. v. Presbyterian Housing Development Co.,* 739 A.2d 180, 188 (Pa.Super.1999) ("Our supreme court has previously held that where a contract provides for arbitration of all claims or disputes arising out of or relating to the contract, the parties intended to submit all of their grievances to arbitration, regardless of whether the claims sounded in tort or contract.") (citing *Flightways Corp. v. Keystone Helicopter Corp.,* 459 Pa. 660, 331 A.2d 184 (1975)).

### 2. Shaheen's Claims

▪ Shaheen's individual claims are combined with Cybertek's claims for lost

---

(8th Cir.2001); *Telectronics Pacing Systems, Inc. v. Guidant Corp.,* 143 F.3d 428, 431 (8th Cir.1998). *See also McLaughlin Gormley King Co. v. Terminix Intern. Co.,* 105 F.3d 1192, 1193–94 (8th Cir.1997) (applying *First Options* ).

**8.** Count I of the plaintiffs' state-court petition is labeled "Refusal to Approve Sale of Franchise and Tortious Interference With Prospec-

tive Contractual Relations." (Filing 1, exhibit A, at 2.) It is unclear from the pleadings whether the purported tort claim pertains only to Shaheen's expectancy of an employment contract with Armilian, or whether it also pertains to the contract that Cybertek allegedly entered into with Armilian for the sale of its business. Plaintiffs' brief in opposition to the pending motion makes no mention of a tortious interference claim.

profit on the Armilian sale (Count I) and for unpaid commissions (Count II). She claims entitlement to the same damages as Cybertek, plus additional damages.

Shaheen generally alleges that she "was the sole shareholder of Cybertek, Inc. and would have retained the benefit of the purchase price of any sale of Cybertek." (Filing 1, exhibit A, ¶ 1.) Count I alleges that the plaintiffs (plural) contracted with Armilian for the sale of Cybertek, and that "Shaheen and Armilian further agreed to enter into an employment agreement for Shaheen to provide services at an executive level salary and participation in profit sharing." (Filing 1, exhibit A, ¶ 7.) It is further alleged that "Plaintiffs lost at least $362,000 on the sale of their business," and "in addition, Plaintiff Shaheen lost the benefit of the employment agreement to be entered into with Armilian and was damaged in a like amount to the salary and benefits to be afforded to her." (Filing 1, exhibit A, ¶ 16.)

Count II alleges that the plaintiffs (plural) sold and procured the sale of Bentley's products to the NDOR, and were promised commissions in connection with such sales activities. (Filing 1, exhibit A, ¶¶ 18, 21.) It is alleged that "Plaintiffs have suffered damages of loss [sic] commissions of not less than $131,345," and, moreover, that "Plaintiff Holly Shaheen has suffered mental damages, evidenced by (and not limited to) her headaches, nausea, loss of sleep, and depression." (Filing 1, exhibit A, ¶¶ 31, 32.)

To the extent that Shaheen's claims merely derive from her corporation, it necessarily follows that they also "arise under" or "relate to" the MVAR Agreement. Any such derivative claims should be arbitrated even though Shaheen is not a signatory to the MVAR Agreement.[9] *See, e.g.,*

In re Hydro Action, Inc., 266 B.R. 638, 645 (Bankr.E.D.Tex.2001) ("The jurisprudence is clear that, in limited circumstances, one who is not a signatory or direct party to a contract containing an arbitration clause, but whose position or conduct vis-a-vis that contract or one of the parties thereto is such that one may be deemed a third party beneficiary of the contract or otherwise held to be bound by the terms thereof through state law principles of contract and agency law, may be compelled to arbitrate a dispute arising out of or relating to the contract. Included among such principles are: (1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter ego; and (5) estoppel.") (footnotes omitted). *See also Dominium Austin Partners, L.L.C. v. Emerson,* 248 F.3d 720, 728 (8th Cir.2001) ("It would be inequitable to allow [plaintiffs] to claim that [defendants] are liable for failure to perform under a contract and at the same time to deny that [defendants] are contractual parties in order to avoid enforcement of the arbitration clause.").

■ It appears, though, that Shaheen is alleging that Bentley is independently liable to her for interfering with her prospective employment contract with Armilian and for inflicting emotional distress. While these tort claims may also "relate to," or possibly even "arise under," the MVAR Agreement, the arbitration clause cannot reasonably be construed to apply to them. "[T]he FAA's pro-arbitration policy does not operate with out regard to the intent of the contracting parties, for arbitration is a matter of consent, not of coercion. Thus, a party cannot be forced to submit to arbitration any dispute that he has not agreed to submit." *Keymer,* 169 F.3d at 504 (citations omitted).

---

9. Whether such derivative claims are actionable is a separate question, and one that is beyond the scope of the pending motion.

## B. Stay of Plaintiffs' Action Pending Arbitration

To summarize, all of Cybertek's claims, whether sounding in contract or tort, are arbitrable under the terms of the MVAR Agreement. Insofar as Shaheen has attempted to join in such claims, whether as a beneficiary of the MVAR Agreement, or as Cybertek's "alter ego," or on some other legal or equitable basis that would effectively make her a party to the agreement, she is also bound by the arbitration clause. She, however, is not bound to arbitrate any separate and distinct claims that she may have against Bentley for its alleged tortious conduct.

 There is no evidence that Bentley is in default in proceeding with arbitration. "A default occurs when a party 'actively participates in a lawsuit or takes other action inconsistent with' the right to arbitration." *N & D Fashions*, 548 F.2d at 728 (quoting *Cornell & Co. v. Barber & Ross Co.*, 360 F.2d 512, 513 (D.C.Cir. 1966)). To the contrary, it appears that Bentley has promptly raised the arbitrability issue by filing the pending motion. *See id.* (defendant not in default where it demanded arbitration and moved for a stay immediately upon the filing of the complaint); *Barker*, 154 F.3d at 793 (defendant not in default where it moved to dismiss action following removal to federal court). Bentley therefore is entitled to a mandatory stay with respect to those claims that have been determined to be within the scope of Section 11.11 of the MVAR Agreement.

As interpreted by the Eighth Circuit, Section 3 of the FAA also "is broad enough to permit the stay of litigation between nonarbitrating parties as long as that lawsuit is based on issues referable to arbitration under an arbitration agreement governed by the Arbitration Act." *Contracting Northwest v. City of Fredericksburg*, 713 F.2d 382, 387 (8th Cir.1983). *See also* *AgGrow Oils*, 242 F.3d at 782 & n. 5 (district court has discretion to stay third party litigation that involves common questions of fact that are within the scope of the arbitration agreement); *City of Bismarck*, 767 F.2d at 432 (district court had authority under Section 3 of the FAA to stay litigation as to all parties pending arbitration between plaintiff and one of the defendants). Thus, even if Shaheen's claims are not subject to the MVAR Agreement arbitration clause, litigation of such claims nonetheless may be stayed "to further the strong federal policy favoring agreements to arbitrate." *AgGrow Oils*, 242 F.3d at 782. The federal policy would be thwarted if Shaheen were allowed to pursue claims in this court that are essentially identical to the arbitrable claims of her corporation.

Presumably, Section 3 also is broad enough to permit the stay of an entire action even though only some of the issues in the lawsuit are referable to arbitration. Indeed, the Courts of Appeal for the Second and Seventh Circuit have declared that a "commonsense" reading of Section 3 leads to the conclusion that "if there is a federal action 'upon' an 'issue referable to arbitration' by the terms of an arbitration agreement, then the federal court must 'stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement.'" *McCowan v. Sears, Roebuck and Co.*, 908 F.2d 1099, 1106 (2nd Cir.1990), *overruled in part, Citrus Marketing Bd. of Israel v. J. Lauritzen A/S*, 943 F.2d 220, 224 (2nd Cir.1991) (to the extent *McCowan* indicated, while reserving ruling on the issue, that a nonparty to an arbitration agreement could obtain a stay under Section 3, such indication was contrary to Second Circuit precedent); *Morrie Mages and Shirlee Mages Foundation v. Thrifty Corp.*, 916 F.2d 402, 406 (7th Cir.1990), *overruled in part, IDS Life Ins. Co. v. SunAmerica, Inc.*, 103

F.3d 524, 529 (7th Cir.1996) (holding that the movant for a stay, in order to be entitled to a stay under Section 3 of the FAA, must be a party to the agreement to arbitrate, as must be the person sought to be stayed). *See also Collins Radio Co. v. Ex–Cell–O Corp.*, 467 F.2d 995, 1000 (8th Cir.1972) (district court had discretionary authority to stay entire action where only one count of three-count complaint was subject to arbitration).

■ In any event, it is within the court's inherent power to grant a stay in order to control its docket, conserve judicial resources, and provide for a just determination of the cases pending before it. *Contracting Northwest*, 713 F.2d at 387 (alternative basis for issuance of stay); *City of Bismarck*, 767 F.2d at 432 (same); *Webb*, 800 F.2d at 808 (district court that granted request for stay pending arbitration "was merely exercising its inherent judicial power to control the case before it and prevent unnecessary litigation."). *See also Simitar Entertainment, Inc. v. Silva Entertainment, Inc.*, 44 F.Supp.2d 986, 997 (D.Minn.1999) ("Expanding the stay, so as to encompass all of the nonarbitrable claims in the case, is appropriate where the arbitrable claims predominate, or where the outcome of the nonarbitrable claims will depend upon the arbitrator's decision."). Even if Cybertek's tort claims and Shaheen's "derivative" claims do not fall strictly within the scope of the arbitration clause, they involve numerous questions of fact which are common to Cybertek's breach-of-contract claims, and the arbitrator's findings may be dispositive. Shaheen's "separate" tort claims are likewise closely associated with her "derivative" claims. It is therefore appropriate to stay the entire action.[10]

Accordingly,

IT IS ORDERED that:

1. The defendant's motion for leave to submit a reply brief (filing 11) is granted *instanter*;

2. The defendant's motion to dismiss or stay the action pending arbitration (filing 7) is granted in part and denied in part, as follows:

 a. Pursuant to 9 U.S.C. § 3, this case is stayed pending arbitration of all claims that are alleged by the plaintiff Cybertek, Inc., or by the plaintiffs jointly; and

 b. In all other respects, the defendant's motion is denied;

3. The clerk of the court is directed to close this case for statistical purposes; and

4. The parties shall each file a status report, not less than once every six months, regarding the progress of their arbitration.

---

10. Bentley's alternative motion to dismiss will be denied. Dismissal may be an appropriate means of enforcing an arbitration agreement where all claims are subject to compulsory arbitration. *See, e.g., Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) (Section 3 of FAA does not preclude dismissal when all of the claims must be submitted to arbitration); *Fedmet Corp. v. M/V BUYALYK*, 194 F.3d 674, 676 (5th Cir. 1999) (district courts have discretion to dismiss cases in favor of arbitration under 9 U.S.C. § 3). *See also Barker* 154 F.3d at 790 (affirming dismissal because of arbitration clause). In this case, though, not all of Shaheen's claims are required to be submitted to arbitration, and it has been determined that a discretionary stay should be entered with respect to such claims. The court finds no compelling reason to dismiss rather than stay the plaintiffs' other claims. Should the plaintiffs fail to pursue arbitration, however, the court may revisit this issue.