**Sandy DITTO, Appellee,**

v.

**RE/MAX PREFERRED PROPERTIES, INC., an Oklahoma corporation; Norma Coppedge and Donna Graham, individually, Appellants.**

**Nos. 78868, 79173.**

Court of Appeals of Oklahoma, Division No. 1.

Sept. 7, 1993.

As Corrected Sept. 8, 1993.

Mona S. Lambird and Marcia A. Rupert, Oklahoma City, for appellants.

Richard M. Healy and Randy P. Conner, Oklahoma City, for appellee.

## MEMORANDUM OPINION

JONES, Presiding Judge:

Appellants in this interlocutory appeal challenge the trial court's order denying their motion to compel arbitration, and to stay appellee's district court suit pending completion of arbitration.

Sandy Ditto began working for appellant RE/MAX Preferred Properties, Inc. ("RE/MAX") in April, 1990. RE/MAX is a local franchisee of a national real estate brokerage organization.

In the fall of 1990, Ditto signed an "Independent Contractor's Agreement" ["the Agreement"] with RE/MAX. Appellant Norma Coppedge signed the Agreement on behalf of RE/MAX as "Broker." (Coppedge executed the agreement on September 20, 1990, and Ditto signed it on October 2; but, by its terms, the agreement became effective on September 20, 1990.)

RE/MAX discharged Ditto and terminated the Agreement on March 28, 1991. Ditto subsequently sued RE–MAX, Coppedge, and Donna Graham. Ditto cast her petition in five counts: (1) breach of contract, (2) negligent or intentional infliction of emotional distress, (3) unsafe work place, (4) tortious interference with contract rights, and (5) conversion. Ditto alleged she was not timely paid her proper share of commissions due under the Agreement, or was not paid commissions at all; that Coppedge and Graham caused her emotional distress by treating her differently from other agents, and failed to protect her from the outrageous conduct of supervisors and co-workers; and that Coppedge and Graham converted the deposit which Ditto paid them when she first began working for RE/MAX.

Appellants moved to stay the trial court proceedings, and to compel arbitration of Ditto's claims, citing the following provision in the Agreement:

### MEDIATION.

Contractor agrees that if any dispute regarding commissions or any other matter should arise between Contractor and any other RE/MAX Associate, Broker or Sales Office, such dispute will be referred to mediation for determination in the following manner:

A. Contractor will report such dispute in writing to the manager of RE/MAX and will give the manager his or her full cooperation in the manager's efforts to settle the dispute in as simple and amicable a manner as possible.

B. If, after all reasonable efforts, the manager is unable to effect a settlement acceptable to all parties to the dispute, the dispute will be referred to a mediation committee. Such committee will consist of three members of the RE/MAX Organization who shall be selected by RE/MAX *Manager/Broker* from a representative pool of RE/MAX Sales Agents. Each party to the dispute shall appear personally and state his or her case in as clear and concise a manner as possible. The decision of the mediation committee shall be final and binding on all parties concerned.[1]

[Rec. 15; Uniform Independent Contractor's Agreement, p. 5.]

Ditto opposed the motion, arguing that the arbitration clause infringed her right to jury trial, that it was unenforceable for "lack of mutuality," and that selection of

---

1. Although the clause refers to "mediation," the process is clearly binding on both parties, and is therefore indistinguishable from, and may be treated as, an agreement to arbitrate disputes. *M–D Finance Corp. v. Penn Power & Light Co.,* 858 F.2d 825, 830 (2nd Cir.1988).

arbitrators under the clause unfairly "discriminated" [her word] against her.

The trial court refused to compel arbitration, ruling that "under the terms of the agreement ... plaintiff [will] be bound by a decision made by persons selected by the opposition from persons over whom they have some control." [Rec. 97.]

■ "Arbitration is the referral of a dispute by the voluntary agreement of the parties to one or more impartial arbitrators for a final and binding decision as a determination of their dispute." *Voss v. City of Oklahoma City,* 618 P.2d 925, 927 (Okla. 1980). Arbitration in commercial contracts in Oklahoma is governed by the Uniform Arbitration Act, 15 O.S.1991 §§ 801–18 ["the Act"].

Appellants contend that the trial court should have stayed the case, for which proposition they rely on § 803 of the Act:

(A). On application of a party showing an agreement [to arbitrate], and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration....

\* \* \* \* \* \*

(D). Any action or proceeding involving an issue subject to arbitration shall be stayed if an order for arbitration or an application therefor has been made under this act or, if the issue is severable, the stay may be with respect thereto only....

15 O.S.1991 § 803(A), (D).

Appellants also contend that, even if it rejected the agreed method for appointment of arbitrators as inequitable, the trial court should have stayed the proceedings in litigation, and ordered arbitration by substitute arbitrators, under § 804 of the Act:

If the arbitration agreement provides a method of appointment of arbitrators, this method shall be followed. In the absence of such provisions, or if the agreed method fails or for any reason cannot be followed, ... the court on application of any party to the agreement shall appoint an arbitrator. An arbitrator so appointed has the same powers as the arbitrator specifically named in the agreement.

15 O.S.1991 § 804.

■ Responding to Ditto's trial court's arguments, Appellants have cast the fairness issues presented by the mediation clause in the Agreement in terms of "lack of mutuality." We reject this as a proper ground to challenge the clause at issue. The trial court's refusal to compel arbitration was not based on any perceived lack of mutuality. The trial court expressly rested its decision on the unfairness of the *arbitration panel.* Moreover, the "lack of mutuality" argument here lacks merit. Ditto contends that the mediation clause lacks mutuality of obligation because it says "Contractor agrees ..." Ditto thus infers that the clause does not bind Appellants to any like agreement to arbitrate disputes, but the plain language of the Agreement provides that "any dispute" between Ditto and a sales associate, broker, or office is subject to mediation. Those cases in which arbitration has been refused due to lack of mutuality are distinguishable, because they involve truly one-sided obligations to arbitrate. *See R.W. Roberts Const. Co. v. St. Johns River Water Mgt. Dist.,* 423 So.2d 630, 632 (Fla.Ct.App.1982) [no error to deny motion to compel arbitration; contract clause required only subcontractor's claims to be arbitrated, but not general contractor's claims]; *Arcata Graphics Corp. v. Silin,* 59 A.D.2d 1007, 399 N.Y.S.2d 738, 738–39 (1977) [only one party's claims subject to arbitration]; *but cf., Regina Const. Corp. v. Envirmech Contracting Co.,* 80 Md.App. 662, 565 A.2d 693, 698–99 (1989) [Envirmech's "lack of mutuality" argument rejected; arbitration clause required arbitration of disputes "solely with Contractor," which bound both Envirmech and general contractor].

■ The critical inquiry on this appeal involves Ditto's contention that the arbitration clause is unenforceable due to its potential for producing an arbitration panel which lacks the impartiality required of arbitrators.

The law does not require arbitrators to be completely impartial or disinterested, so long as they are able to adjudicate the parties' dispute fairly and impartially. *Voss v. City of Oklahoma City,* 618 P.2d 925, 927 (1980); *see Painters District Council No. 33 v. Moen,* 128 Cal.App.3d 1032, 181 Cal.Rptr. 17 (1982); *Lee v. Marcus,* 396 So.2d 208 (Fla.Ct.App.1981). *Cf.,* 15 O.S.1991 § 812(A)(2) [arbitration award may be vacated upon showing of "evident partiality" of arbitrator(s) ].

Even so, impartiality of an arbitrator has been recognized as vitally important to the arbitration process. In *Voss,* the supreme court stated:

> The arbitrator is part of a system of self-government which the parties have created. Parties are relatively free to select individuals as arbitrators although certain minimum standards of knowledge, impartiality and moral character are required which tend to equate a private arbitrator with a public judge. The United States Supreme Court in *Commonwealth Coatings Corp. v. Continental Casualty Co.,* 393 U.S. 145[, 148–49], 89 S.Ct. 337 [, 339] [, 21 L.Ed.2d 301] [1968], held that courts should be even more scrupulous to safeguard the impartiality of arbitrators than judges, because arbitrators are completely free to decide the law and [to] determine the facts and are not subject to appellate review.

*Voss,* 618 P.2d at 927.[2]

■ We see no reason why the availability of appellate review by statute—*see* 15 O.S.1991 § 817—should make the impartiality of arbitrators any less necessary. The fact that some other judge or panel of judges will review the arbitrator's decision does not detract from the initial importance of impartiality in the decision-making process.

With these principles in mind, we find the case of *Board of Education of Berkeley County v. W. Harley Miller, Inc.,* 160 W.Va. 473, 236 S.E.2d 439 (1977), to be instructive. In that case, the West Virgi-

nia Supreme Court of Appeals used an Aesopian metaphor to describe a situation similar to the present one:

> Let us assume for a minute that for some reason all the rabbits and all the foxes decided to enter into a contract for mutual security, one provision of which were [sic] that any disputes arising out of the contract would be arbitrated by a panel of foxes. Somehow that shocks our consciences, and it doesn't help the rabbits very much either.

*Id.,* 236 S.E.2d at 443.

The West Virginia court was faced, as was the trial court here, with a fundamental paradox in arbitration cases: while the courts must be diligent to protect the fairness of the arbitration process, any judicial intervention to assure such fairness tends to defeat the very purposes of the parties' agreement to arbitrate their dispute, namely, to resolve the dispute quickly and without resort to complex and costly litigation. Thus, the question posed by the court in *Board of Education* is particularly apt: "How can we create any defense other than fraud to an arbitration award without having the defenses eat the rule [of enforceability of arbitration awards] and frustrate the process?" *Id.,* 236 S.E.2d at 446.

After a review of its own case law, the West Virginia court stated,

> A functional analysis of the West Virginia cases which do not favor arbitration demonstrates that this Court would not countenance an arbitration provision by which the parties agree that all disputes will be arbitrated by a panel chosen exclusively by one of the parties. This is the classic rabbits and foxes situation, with the foxes stacking the arbitration panel in their favor. Such a contract provision is inherently inequitable and unconscionable because in a way it nullifies all other provisions of the contract.

*Id.,* at 443.

■ We note that no arbitrators were ever selected under the existing arbitration

2. We view the court's comments in *Voss* as dicta, because in that case there was no issue of the arbitrator's impartiality. However, we are persuaded that *Commonwealth Coatings* represents the correct rule of law to be applied here.

clause in Ditto's employment contract. Nonetheless, we agree with the West Virginia Supreme Court of Appeals that such an arbitration clause as would exclude one of the parties from any voice in the selection of arbitrators cannot be enforced. Such a clause conflicts with our fundamental notions of fairness, and tends to defeat arbitration's ostensible goals of expeditious and equitable dispute resolution.

■ All that remains is to consider Appellants' contention that the trial court should have granted a stay of the district court proceedings so arbitration could proceed with a substitute arbitrator. Appellants' argument ignores the context in which their motion for stay was presented to the trial court. Appellants specifically sought enforcement of the arbitration clause as it appeared in the Agreement, including appointment of arbitrators according to the express terms of the clause, which we have found to be unenforceable. Section 804 of the Act authorizes a court to appoint an arbitrator "on application of any party to the agreement," 15 O.S.1991 § 804, but neither appellants' motion for stay nor Ditto's response requested the court to appoint an arbitrator. The only issues tendered to the trial court related to appointment of arbitrators as called for by the Agreement. Once the court found the arbitration clause unenforceable, there was no basis for ordering a stay of the proceedings. The trial court was not required to anticipate a demand for appointment of substitute arbitrator.

3. Appellants' petition in error set forth the following issues and errors to be raised on appeal:
　1. Did the district court err in refusing to order the parties to arbitrate their dispute as they had contractually agreed, for the sole reason that the court did not believe the method chosen by the parties for selecting arbitrators would result in an impartial panel?
　2. Does the Uniform Arbitration Act, 15 O.S.1981 § 801–18 [sic], mandate an order compelling arbitration and staying a related court proceeding where a written contract between the parties provides for binding arbitration of future controversies and no ground for revocation of the contract is found?
　3. If a district court decides that an agreed method of selecting arbitrators should not be followed, does the Uniform Arbitration Act mandate that the court order arbitration and

We hold the trial court did not err in refusing to compel arbitration by a panel of arbitrators chosen by one of the disputants. We decline to consider any other issue on this appeal.[3]

The trial court's order denying the motion for stay and to compel arbitration is AFFIRMED.

HANSEN, C.J., and ADAMS, J., concur.

■■■

then appoint arbitrators as provided by 15 O.S.1981 § 804?
　4. Does enforcement of a contractual provision by which the parties agree to binding arbitration of future controversies deny any party his right to a jury trial?
We deem only the first and third of these points as presenting cognizable grounds for appellate relief. Appellants made no request for appointment of substitute arbitrators under the Act, and Appellants are not properly aggrieved parties to raise any constitutional challenge to the trial court's order denying their motion to compel arbitration. We note also that the trial court's order denying Appellants' motion to compel says nothing about any constitutional infirmity in the arbitration clause of the Agreement.