175 P.3d 604 (2008)
Roberto RODRIGUEZ, Respondent,
v.
WINDERMERE REAL ESTATE/WALL STREET, INC., a Washington Corporation; and SARA THOMPSON, and the marital community comprised thereof, Appellants.
No. 59526-1-I.
Court of Appeals of Washington, Division 1.
January 28, 2008.
Melanie A. Leary, Demco Law Firm PS, Matthew F. Davis, Attorney at Law, Seattle, WA, for Appellants.
David Nelson Bruce, Savitt & Bruce LLP, Seattle, WA, for Respondent.
APPELWICK, C.J.
¶ 1 The trial court refused to enforce Windermere Wall Street's employment contract requiring arbitration of disputes before a three person panel. The panelists were to be appointed solely by the parent franchisor drawing from a pool of Windermere employees affiliated with other franchisees. Rodriguez claims that after terminating his employment, Windermere refused to pay a commission previously due to him, and paid the money to another agent still in Windermere's employ. On these facts, a process in which Windermere appoints all three arbitrators inherently lacks neutrality. We affirm.

Facts
¶ 2 In January 2003, Roberto Rodriguez became a real estate agent with Windermere Real Estate/Wall Street, Inc. (Windermere Wall Street), a franchisee of Windermere Real Estate Services, Co. He signed a broker/sales associate agreement which designated him as an independent contractor and subjected him to mandatory binding arbitration for all disputes according to Windermere's internal arbitration procedures. The procedures are specified by Windermere, modified from time to time, and posted on an intranet site.
¶ 3 While at Windermere Wall Street, he listed homes jointly with another agent, Sara Thompson. When Rodriguez and Thompson sold property jointly, they shared the listing agents' commission fee equally. Rodriguez and Thompson listed the Brady property. They sold this property in January 2005. According to the commission disbursement form, both agents were entitled to 50 percent of the listing agents' commission equaling $16,800 per person.
¶ 4 In April 2005, Windermere Wall Street terminated Rodriguez's employment. The signed check-off list for a "salesperson leaving broker's office" acknowledged the pending Brady property sale and the $16,800 commission owed to Rodriguez upon closure of that sale. After the sale finally closed in *606 December 2005, Windermere Wall Street told Rodriguez that he would only receive a 20 percent referral check. Rodriguez later discovered that the commission disbursement form for the transaction had been changed to give the entire listing agents' commission to Thompson.
¶ 5 To recoup the commission, Rodriguez's attorney sent a letter requesting binding arbitration before a single, independent, nonpartisan arbitrator, to which Windermere Wall Street never responded. Rodriguez filed suit against Windermere Wall Street and Thompson in November 2006, in which he alleged willful withholding of wages, violations of the Consumer Protection Act, breach of contract, and unjust enrichment. Windermere Wall Street provided no responses to Rodriguez's requests for production or interrogatories. Instead, Windermere Wall Street brought a motion to compel arbitration based on the arbitration provision in Rodriguez's contract. The trial court refused to compel arbitration because of inherent unfairness in Windermere's arbitration procedure. "RCW 7.04A.110(2) requires that an arbitration be neutral as defined in the statute. Limiting the panel of arbitrators exclusively to those selected by Windermere Real Estate Service, Co., even if the local franchise office is excluded from the `list', violates the language and spirit of the statute." Windermere Wall Street appeals this ruling.

Discussion
¶ 6 Arbitration agreements are "valid, enforceable, and irrevocable except upon a ground that exists at law or in equity for the revocation of contract." RCW 7.04A.060(1). Strong public policy favors arbitration. Perez v. Mid-Century Ins. Co., 85 Wash.App. 760, 765, 934 P.2d 731 (1997). "The party opposing arbitration bears the burden of showing that the agreement is not enforceable." Zuver v. Airtouch Communications, Inc., 153 Wash.2d 293, 302, 103 P.3d 753 (2004). We engage in de novo review of a trial court's decision on a motion to compel arbitration. Kruger Clinic v. Regence Blueshield, 157 Wash.2d 290, 298, 138 P.3d 936 (2006). Washington law provides that "[a]n arbitrator who has a known, direct, and material interest in the outcome of the arbitration proceeding or a known, existing, and substantial relationship with a party may not serve as a neutral arbitrator." RCW 7.04A.110(2).
¶ 7 Windermere's contract calls for arbitration for "commission or other disputes which cannot be resolved between [Associate and Broker] or between other Windermere Brokers or Associates." The internal arbitration procedures govern the appointment of a three person arbitration panel. "The panelists are generally made up of Windermere owners, brokers, managers and Sales Associates. The Arbitration Panel, consisting of three (3) or more members, shall be appointed by the [Windermere] Services Coordinator." The trial court found that the franchisor's selection of the arbitrators violates the spirit of this neutrality required by the statute. Rodriguez contends that the Windermere process of appointing Windermere agents is too closely affiliated with Windermere Wall Street, such that the proceedings as imposed by Windermere are fundamentally unfair and unenforceable. Windermere Wall Street argues that the arbitration provision does not lack neutrality because agents and brokers from other Windermere franchises arbitrate the dispute, the franchisor, not Windermere Wall Street appoints the panel, actual bias is prohibited and the parties can challenge the appointees for cause.
¶ 8 No Washington case law analyzes arbitrator neutrality where selection of all the arbitrators is performed by an entity with ties to one party. This court has discussed arbitrator neutrality in the context of arbitration clauses that allow each party to appoint one arbitrator and jointly agree on a third. See, Perez v. Mid-Century Ins. Co., 85 Wash. App. 760, 766, 934 P.2d 731 (1997). This selection process was not inherently unfair. Id. "It is widely acknowledged that the party arbitrators serving on a tripartite panel may not be completely neutral. The benefit to the parties is that their nominees are frequently experts in the area, and they are chosen as arbitrators precisely because of their involvement and expertise." Id.
*607 ¶ 9 Two cases from other jurisdictions specifically discuss internal arbitration provisions within real estate corporations. In Ditto v. Remax Preferred Properties, Inc., 861 P.2d 1000 (1993), the contract between the company and associate required disputing parties to submit to binding arbitration in front of a committee. "Such committee will consist of three members of the RE/MAX Organization who shall be selected by RE/MAX Manager/Broker from a representative pool of RE/MAX Sales Agents." Id. at 1001. The court determined that although "[t]he law does not require arbitrators to be completely impartial or disinterested, so long as they are able to adjudicate the parties' dispute fairly and impartially," the trial court correctly refused to enforce arbitration in front of a panel chosen by one of the disputing parties. Id. at 1003-1004. According to the court, "such an arbitration clause as would exclude one of the parties from any voice in the selection of arbitrators cannot be enforced. Such a clause conflicts with our fundamental notions of fairness, and tends to defeat arbitration's ostensible goals of expeditious and equitable dispute resolution." Id. at 1004. In Cross & Brown Co. v. Nelson, 4 A.D.2d 501, 167 N.Y.S.2d 573 (1957), the arbitration provision provided for submission of disagreements to the Board of Directors of the employer. The New York court stated, "no party to a contract, or someone so identified with the party as to be in fact, even though not in name, the party, can be designated as an arbitrator to decide disputes under it." Id. at 503, 167 N.Y.S.2d 573.
¶ 10 Windermere attempts to differentiate its arbitration clause from the unenforceable agreement in Ditto because the panel is selected by Windermere Services Company, the franchisor, not Windermere Wall Street, the party-employer.[1] In addition, Windermere argues its rules eliminate the possibility of biased panelists by excluding anyone related to a party by business or marriage or who might have any hostility or bias toward a party. Windermere believes these rules remove the party-employer from the appointment procedure enough to ensure fair arbitration. The manual specifies that panelists cannot be related to a party by business or marriage, cannot be involved in an arbitration hearing or lawsuit against the party, cannot be hostile or biased, and cannot have other reasons that would prevent them from serving fairly. In addition to these stated rules, Patrick Grimm, the President of Western Washington Services and Services Coordinator for Windermere Real Estate Services, Co., employs additional criteria. He stated, in a declaration, "I never appoint panel members who are licensed to or in any way affiliated with a party to the dispute. Additionally, I do not appoint panel members from the same local area. In this case, no one licensed to or affiliated with Windermere Real Estate/Wall Street, Inc. (which has four offices in Seattle) or from the Seattle metro area will be appointed to the arbitration panel." But, according to the arbitration provision, all panelists are members of the Windermere family.
¶ 11 Windermere Wall Streets asserts that "both Rodriguez and Windermere Wall Street have equal input into the selection of the panel in the form of unlimited challenges for cause and one peremptory challenge." The Windermere arbitration procedure allows for one challenge without cause and unlimited challenges for cause. Cause includes "ill will or hostility toward the party; controversy between panelists and party; and/or other justifiable reasons which would tend to cause bias or otherwise influence the Panelist's judgment." The parties must submit challenges to the Windermere Services Coordinator in writing. While the arbitration procedures define cause and the method parties must use to challenge, they do not provide a mechanism for determining whether cause exists. The arbitration manual merely states, "if a challenge is sustained, the Services Coordinator appoints a replacement panelist." A determination of cause is solely within the discretion of Windermere Services Coordinator. If the Windermere Services Coordinator agrees, then he will appoint another panelist. But, the arbitration *608 provision includes no procedure for challenging the Windermere Services Coordinator's decisions.
¶ 12 All potential arbitration panelists must be members of the Windermere "family"  owners, brokers, managers, and sales associates affiliated with other Windermere franchisees. Franchisees have a contractual relationship with the franchisor. A franchise is "[a]n agreement, express or implied, oral or written, by which: (i) A person is granted the right to engage in the business of offering, selling, or distributing goods or services under a marketing plan prescribed or suggested in substantial part by the grantor or its affiliate." RCW 19.100.010. This results in a binding, legal relationship that yields advantages to both franchisor and franchisee. Lobdell v. Sugar `N Spice Inc., 33 Wash.App. 881, 888, 658 P.2d 1267 (1983). But this relationship also diminishes the independence of the franchisee. "Franchisees occupy an undefined middle ground, possessing some of the autonomy of retail or wholesale dealers, yet some of the dependence of employees or agents." Id. at 887, 658 P.2d 1267.
¶ 13 During oral arguments, Windermere emphasized that the Windermere franchisor has established standards of practice which the franchisees must follow. This "Windermere Way" may differ from the rules and procedures of other real estate companies. Disputes, such as those concerning which agent receives a commission, must be resolved according to the "Windermere Way." As a result, Windermere contends that resolving disputes in the Windermere way, according to the Windermere standards of practice, necessitates decision-makers that are members of the Windermere "family." Arbitration composed of Windermere representatives is required to ensure resolution of disputes in keeping with the "Windermere Way."
¶ 14 Washington law favors arbitration. Munsey v. Walla Walla College, 80 Wash.App. 92, 94-95, 906 P.2d 988 (1995). Arbitration serves as a beneficial alternative to litigation that can provide a more expeditious and less expensive resolution of disputes. King County v. Boeing Co., 18 Wash. App. 595, 602, 570 P.2d 713 (1977). But, arbitration can substitute for litigation only if we have confidence in the ability of the arbitrators to make fair, unbiased decisions. The choice of arbitrators has serious implications because: "arbitrators are, when acting under unlimited authority, . . . final judges of both the law and the facts, and . . . no review will lie for a mistake in either." Dep't of Soc. & Health Servs. v. State Pers. Bd., 61 Wash. App. 778, 785, 812 P.2d 500 (1991) (citing Carey v. Herrick, 146 Wash. 283, 292, 263 P. 190 (1928)). Washington law prevents those with "known, direct, and material interest in the outcome of the arbitration proceeding or a known, existing, and substantial relationship with a party" from serving as a neutral arbitrator. RCW 7.04A.110(2).
¶ 15 Rodriguez had received a written acknowledgment of a commission due from Windermere. After his employment was terminated, Windermere changed position and paid most of the acknowledged commission to an agent still in its employ. We do not decide whether this was proper or not; the merits are not before us. The question is whether the arbitration process prescribed by Windermere should be applied to these facts. Windermere provided the contract, wrote the arbitration procedures, and selects the arbitrators. The arbitrators must be solely from current employees within the Windermere franchisee family. The arbitrators are all brokers or agents of sister franchisees, which have a continuing, mutually beneficial relationship with the franchisor. The arbitrators are expected to reflect the "Windermere Way." The "Windermere Way" may mean that it is in the interests of Windermere Wall Street to have the commission in dispute paid to a continuing employee rather than to someone whose employment it has terminated. We conclude the potential arbitrators have a known, existing and substantial relationship with the party-franchisee. On these facts, the process does not satisfy the neutrality requirements of the arbitration statute.
¶ 16 We affirm the trial court's denial of the motion to compel arbitration.
*609 ¶ 17 WE CONCUR: DWYER and BECKER, JJ.
NOTES
[1] Since the franchise agreement was not included in the record, we do not know the nature of the franchise relationship between Windermere Real Estate Services Company and Windermere Wall Street.