**NEW JERSEY BUILDING LABORERS STATEWIDE BENEFITS FUND and The Trustees Thereof**

v.

**AMERICAN CORING & SUPPLY; Associated Industrial Services, Inc.; Auto Midlantic Temp; Construction 2000, Inc.; Ferrarie Contracting; GMS Custom Masonry, Inc.; HAHR Construction; Imperial Construction Group, Inc.; KTC Construction; KNAPEK Industrial, Inc.; MROCZEK Construction; MJR Construction,**

---

Inc.; M&S Mason & General Contracting; Mark Construction; Nexus Properties; SBI Scozzari Builders, Inc.; SBW, Inc.; SLAVCO Construction, Inc.

**Mark Construction, Appellant.**

No. 08–3829.

United States Court of Appeals, Third Circuit.

Argued July 9, 2009.

Filed: July 27, 2009.

Mark I. Silberblatt [Argued], Bisceglie & DeMarco, LLC, Woodland Park, NJ, for Appellant.

Raymond G. Heineman [Argued], James M. Monica, Kroll Heineman, LLC, Iselin, NJ, for Appellees.

Before: SLOVITER, AMBRO and JORDAN, Circuit Judges.

## OPINION OF THE COURT

JORDAN, Circuit Judge.

Appellant Mark Construction ("Mark") seeks vacatur of an arbitration award against it and in favor of appellee New Jersey Building Laborers Statewide Benefit Funds (the "Funds"), a set of trust funds under § 302(c)(5) of the Labor Management Relations Act, 29 U.S.C. § 186(c)(5), and employee benefit funds under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(e)–(f). Because we agree with the District Court that Mark's contention regarding expiration of the contract between the parties is a challenge that must be presented to an arbitrator in the first instance, we will affirm.

## I. Background

In February 2002, Mark, a New Jersey company that performs concrete and masonry work, was engaged in a brick-patching project in Hoboken, New Jersey. During the course of the project, Kazimierz Mroczek, the president and owner of Mark, signed a Short Form Agreement (the "Short Agreement") with the Laborers International Union of North America (the "Union").[1] The Short Agreement incorporated in full a collective bargaining

---

1. The Short Form Agreement is not dated but    Mark contends it was signed in February

agreement ("CBA") between the Union and Employers[2] using the Union's laborers. The CBA required Employers to make certain contributions to the Funds, and it expressly incorporated by reference the Agreements and Declarations of Trust (the "Trust Agreements") for the Funds.

Both the CBA and Trust Agreements contain several provisions which are relevant to the dispute before us. First, § 23.10 of the CBA sets forth beginning and ending dates for the obligations of the parties to that agreement, providing: "This Agreement shall become effective on the 1st day of May 2002, or the date signed, whichever is later, and shall terminate at midnight, April 30, 2007." (App. at 176.) In addition, the CBA contained an evergreen provision, automatically renewing the length of the agreement on a year-to-year basis after April 30, 2007. The evergreen provision was triggered automatically unless an Employer gave notice ninety days prior to April 30, 2007 of its desire to renegotiate the CBA. To terminate the CBA after the April 30 date, an Employer had to "give written notice at least thirty (30) days prior to April 30 of each succeeding year and, if said thirty (30) days notice is given, the [CBA] shall terminate on April 30th of the year following the giving of such notice." (App. at 177.)

As for the Trust Agreements, they provide that the "Trustees may take any act necessary or appropriate to enforce payment of contributions, interest, damages and expenses provided herein." (*Id.* at 254.) They further state that the Funds "shall not be required to exhaust any grievance or arbitration procedure provided by a Collective Bargaining Agreement ... but rather shall have immediate access to the courts ... or *to designate a permanent arbitrator to hear and determine collection disputes.*" (*Id.* at 255, 286, 318) (emphasis added).[3] A May 2007 resolution amended the Trust Agreement to designate J.J. Pierson, Esq., as the Funds' "alternate permanent arbitrator."[4] (*Id.* at 329.)

Mark contends that it twice sought to terminate the Short Agreement by sending a letter to the Union, first on March 4, 2004, and again on January 22, 2007. The January 22 letter, the more extensive of the two, stated that "effective upon expiration of the [CBA] on April 30, 2007, [Mark] terminates and repudiates the [CBA], as well as any other collective bargaining agreement between [Mark] and the Laborers and/or any of its affiliated Local unions." (*Id.* at 185.) The letter went on to say that it "terminate[d] any obligations that [Mark] may have under any Declarations of Trust and Plans, summary plan descriptions, plan documents, or other documents incorporated by reference in the [CBA]" as of the April 30 date. (*Id.*)

On September 19, 2007, counsel for the Funds sent Mark a letter invoking § 15.15(c) of the CBA and requesting to

---

2002. Appellee does not dispute that assertion.

**2.** The CBA defines each non-union signatory, generally construction companies or contractors, as an "Employer." Appellants claim that Mroczek did not receive a copy of the CBA until 2004. While he doubtlessly would have been better served by reviewing a copy of the CBA before signing the Short Agreement, that fact does not render the CBA any less binding on Mark.

**3.** The parties agreed at argument that the relevant arbitration provision is that contained in the Trust Agreements rather than the CBA.

**4.** The Trust Agreements provide that "[t]his Agreement and Declaration of Trust may be amended in any respect from time to time by the Trustees, provided that such amendment shall be duly executed in writing by the Trustees and annexed hereto." (App. at 260, 291, 323.) Mark does not contest the validity of the May 2007 amendment.

inspect and audit Mark's documents to determine whether Mark had satisfied its contribution obligations to the Funds. The September 19 letter requested a response by October 19 and informed Mark that, in the absence of a response, "the Funds will seek an award from an arbitrator compelling you to submit to this inspection" and other penalties. (*Id.* at 187.) By letter dated September 21, Mark acknowledged receipt of the Funds' audit demand and requested a full copy of the CBA. Mark did not submit to an audit.

At the Funds' request, an arbitration hearing was held on October 29, 2007, to address audit-related issues. None of the defendants,[5] including Mark, appeared at the arbitration.[6] The Arbitrator found against Mark, ordering that the Funds had "the right to inspect at all reasonable times payroll, employment and such other records" of Mark. (*Id.* at 116.) He directed Mark to submit to an audit within 30 days and to reimburse the Funds $350 for the arbitrator's fee. Mark did not comply with the arbitrator's order and, on December 12, 2007, the Funds filed a motion to confirm the arbitration award in the United States District Court for the District of New Jersey. Mark opposed the motion and filed a cross-motion to vacate the award.

The District Court granted the Funds' motion. The Court determined that, under *Buckeye Check Cashing, Inc. v. Car-*

*degna*, 546 U.S. 440, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006), Mark's arguments that the CBA was fraudulently executed and had expired prior to the audit demand were challenges to the formation of a contract and, thus, had to be presented to the arbitrator in the first instance. *New Jersey Bldg. Statewide Laborers Ben. Funds v. Mark Constr.*, 2008 WL 3833542, at *2 (D.N.J. Aug.13, 2008). The Court also found that Arbitrator Pierson's determination that Mark was a signatory to the CBA and, as such, was required to both pay contributions to the Funds and to permit the Funds to audit its records, "drew its essence from the CBA" as required under *Ludwig Honold Manufacturing Co. v. Fletcher*, 405 F.2d 1123, 1128 (3d Cir.1969). *Id.* Finally, the Court concluded that Mark had consented to the use of Arbitrator Pierson because, by signing the CBA, it consented to the terms of the Trust Agreements pursuant to which Pierson was appointed. *Id.*

Mark filed a timely notice of appeal and raises two interrelated challenges. First, it contends that, under *Buckeye*, the question of whether it was obligated to arbitrate under the CBA was for the District Court, not the arbitrator and, second, it contends that it was not required to arbitrate because the CBA had expired prior to the audit demand. Mark also challenges the conclusion that it had agreed to the arbitrator.[7]

---

5. The other defendants were American Coring & Supply, Associated Industrial Services, Inc. Auto Midlantic Temp, Construction 2000, Inc., Ferrarie Contracting, GMS Custom Masonry, Inc., Hahr Construction, Imperial Construction Group, Inc., KTC Construction, Knapek Industrial, Inc., Mroczek Construction, MJR Construction, Inc., M&S Mason & General Contracting, Nexus Properties, SBI Scozzari Builders, Inc., SBW, Inc. and Slavco Construction, Inc. None of those companies is a party to this appeal.

6. Mark asserted before the District Court that it had not received adequate notice of the arbitration proceedings. The Court concluded that the September 19 letter, which stated that "the arbitration will take place on October 29, 2007 at 9 a.m." at the Funds' counsel's office gave Mark sufficient notice. Mark does not press the notice objection on appeal and it appears from the record that there was adequate notice.

7. Mark does not challenge the substance of the arbitration award.

## II. Discussion[8]

Federal courts have limited authority to address challenges to arbitration awards. The Supreme Court has broken such challenges into two primary categories, those that "challenge[ ] specifically the validity of the agreement to arbitrate" and those that "challenge[ ] the contract as a whole, either on a ground that directly affects the entire agreement ... or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid." *Buckeye*, 546 U.S. at 444, 126 S.Ct. 1204. Due to the severable nature of an arbitration clause, challenges to arbitrability are reserved for the court, while arguments that attack the contract as a whole must be presented to an arbitrator. *Id.* at 449, 126 S.Ct. 1204 ("We reaffirm today that ... a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator."); *Cf. Certain Underwriters at Lloyd's London v. Westchester Fire Ins. Co.*, 489 F.3d 580, 585 (3d Cir.2007) ("[T]he question of whether the parties have submitted a particular dispute to arbitration, i.e., the question of arbitrability, is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise.") (internal quotations and citation omitted).

We have recognized that "one might call any potentially dispositive gateway question a 'question of arbitrability.' " *Westchester Fire*, 489 F.3d at 585 (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002)). We have therefore emphasized that "the phrase ... has a far more limited scope." *Id.* Rather than being raised whenever a party contends that it is not required to arbitrate, a question of arbitrability is raised only where disputes concern " 'whether the parties are bound by a given arbitration clause' " or " 'whether an arbitration clause in a concededly binding contract applies to a particular type of controversy.' " *Id. (quoting Howsam*, 537 U.S. at 83–84, 123 S.Ct. 588). Unlike a challenge to an arbitration provision, a dispute invoking the termination clause of an agreement is an attack on the agreement itself. *See Becker Autoradio U.S.A., Inc. v. Autoradiowerk GmbH*, 585 F.2d 39, 45 (3d Cir.1978) ("[W]e find it difficult to understand how a dispute concerning the termination and renewal clause of [an] agreement ... did not 'arise out of' or is not 'about' [that] Agreement.")

Mark's argument that the CBA expired prior to the audit demand, thereby obviating any requirement that it arbitrate, challenges the contract as a whole.[9] No part of Mark's argument on this appeal attacks the arbitration clause itself. Mark does not argue that the arbitration provision is invalid on its face or that anything in the language of that provision renders it inapplicable to Mark. Nor does the company contend that the subject of the dispute, the audit request, falls outside of the scope of the arbitration provision. Rather, Mark claims that the contract is unenforceable because it expired on April 30, 2007. Such a claim is a facial attack on the contract, analogous to a claim challenging a contract's validity. *See Buckeye*, 546 U.S. at 444, 447–48, 126 S.Ct. 1204 (noting that

8. The District Court had jurisdiction pursuant to 29 U.S.C. § 1132 and 9 U.S.C. § 9. We have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over legal questions regarding the applicability of an arbitration agreement. *Gay v. CreditInform*, 511 F.3d 369, 376 (3d Cir.2007).

9. Appellees contend that Mark claimed the CBA "was void *ab initio* for fraud in the execution." Mark, however, does not press that argument on appeal.

"[t]here can be no doubt that [the Federal Arbitration Act applies] to contracts that later prove to be void" and that the argument of whether a contract is void or voidable is for the arbitrator.).

Further, Mark's argument that the CBA expired is contingent upon whether Mark successfully invoked the termination provision of that contract. The parties here are sophisticated and negotiated an agreement containing a detailed termination provision. Whether that provision was activated and caused the CBA to expire is a question that arises out of the contract generally, *Becker*, 585 F.2d at 45, not out of the arbitration clause, and it is therefore a question that had to be presented to the arbitrator in the first instance.[10]

### III. Conclusion

Mark failed to raise its challenge to the enforceability of the CBA and Trust Agreements before the arbitrator and may not do so for the first time before the District Court. We will therefore affirm the order of the District Court confirming the arbitration award.

---

**10.** We also agree with the District Court that because Mark consented to unilateral selection of the arbitrator by the Funds, it cannot now complain about lack of input. Although an arbitration agreement providing for unilateral selection of an arbitrator by one party might give us pause if an unsophisticated party were involved, that is not the case here. *Cf. Ditto v. RE/MAX Preferred Properties*, 861 P.2d 1000 (Okla.Civ.App.1993).